1997-NMCA-039

940 P.2d 185

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Joe GONZALES, Defendant–Appellee.**

**No. 16677.**

Court of Appeals of New Mexico.

April 4, 1997.

Certiorari Denied May 20, 1997.

Tom Udall, Attorney General, M. Anne Wood, Assistant Attorney General, Santa Fe, for Plaintiff–Appellant.

Paul J. Kennedy, Albuquerque, for Defendant–Appellee.

*OPINION*

BOSSON, Judge.

█ 1. This case presents a double jeopardy question of first impression in New Mexico: Whether Defendant, who was found to be in contempt for violating a domestic violence order, may subsequently be prosecuted for substantive criminal offenses stemming from the same conduct that gave rise to the contempt adjudication. In the case before us, we hold that the Double Jeopardy Clause does not bar such subsequent prosecution. We reverse the district court's dismissal of the subsequent criminal charges and remand for reinstatement.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Order Prohibiting Domestic Violence

2. On June 27, 1994, the Special Commissioner, acting under the Family Violence Protection Act, NMSA 1978, §§ 40–13–1 to –7 (Repl. Pamp. 1994 & Cum.Supp.1996), issued a domestic violence order and order to appear on the petition of Barbara Gonzales, wife of Defendant (Wife). Section 40–13–4. On July 15, 1994, the Special Commissioner held a hearing and issued an Order Prohibiting Domestic Violence (the Order). Section 40–13–5. The Special Commissioner made findings and recommendations, including that Defendant and Wife shall not "abuse" each other and shall "stay away" from each other. The Order stated that abuse included "harassing, restraining, assaulting, swearing at, threatening, destroying property, throwing things at, following, making harassing telephone calls, causing physical injury to, battering in any manner or stalking." The stay away provision of the Order forbade the parties from talking to, visiting, or contacting each other in any way and included a prohibition on their going within 100 yards of each other's home or workplace. To place each party on notice, the Order stated in bold, capital letters that one who violated any part of the order could be held in contempt of

court and fined or jailed, or both. *See* § 40–13–6.

3. Five days later, on July 20, 1994, Defendant was arrested for violating the July 15, 1994 Order. According to the booking report from the Bernalillo County Detention Center, Defendant was arrested at Wife's workplace at 5:00 p.m. for violation of a restraining order and held without a bond.

4. The following day the district court conducted a contempt hearing. Wife testified that, contrary to the Order, Defendant had not stayed away from her, and instead, on July 20, had followed her in his car for several blocks, tried to make her pull over, and tried to talk to her. She testified to earlier episodes, before the Order had been issued, in which Defendant had also followed her and had destroyed personal property in her home. Wife stated that she wanted Defendant to follow the order and expressed concern that her job might be in jeopardy because of the amount of time she had taken off coming to court about the restraining order. Defendant did not testify. The district court issued a minute order finding that Defendant had wilfully and intentionally violated the terms of the Order and sentenced him to sixty days in jail, with fifty days suspended on the condition that Defendant commit no further violations and begin counseling in anger management within two days of his release from custody. The Court expressed concern for the safety of Wife because the violation had occurred within days of the Order's being issued and because Defendant was an Albuquerque police officer.

### B. Criminal Proceedings

5. On July 25, 1994, Defendant was indicted by a grand jury for false imprisonment, battery, stalking, and harassment. The indictment was based partially on the encounter between Defendant and Wife on July 20, 1994. On June 30, 1995, Defendant filed a motion to dismiss the charges of stalking and harassment on the basis that Defendant had already been prosecuted, convicted, and sentenced for the same acts in the contempt hearing on July 20, 1994, and that the earlier action precluded a successive prosecution on the stalking and harassment charges.

On July 17, 1995, the district court held a hearing on Defendant's motion to dismiss those charges on the grounds that prosecution was barred by double jeopardy. The court dismissed the stalking and harassment charges, finding that Defendant had already been punished for engaging in the same behavior. The State appeals from that dismissal.

## II. DISCUSSION

### A. The *Blockburger* Test and Double Jeopardy

6. The Fifth Amendment to the United States Constitution provides that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." The New Mexico Constitution similarly provides that no person shall be "twice put in jeopardy for the same offense." N.M. Const. art. II, § 15. The Double Jeopardy Clause affords a defendant protection against a second prosecution for the same offense after acquittal, protection against a second prosecution for the same offense after conviction, and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969); *State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 625, 904 P.2d 1044, 1050 (1995). The federal and New Mexico Double Jeopardy Clauses have generally been interpreted by our Supreme Court as being substantially similar, although the Supreme Court expressly reserved the question whether the New Mexico Double Jeopardy Clause provides greater protection under circumstances other than the multiple punishment doctrine. *See Kennedy*, 120 N.M. at 625, 904 P.2d at 1050; *cf. State v. Breit*, 122 N.M. 655, 663–66, 930 P.2d 792, 800–03 (1996) (construing New Mexico Double Jeopardy Clause in a manner distinct from federal case law on issue of prosecutorial misconduct).

7. In both multiple punishment and multiple prosecution contexts, the United States Supreme Court has applied the "same elements" or "*Blockburger*" test set forth in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), as the essence of the double jeopardy inquiry. *See, e.g., United States v. Dixon*, 509 U.S. 688, 696, 113 S.Ct. 2849, 2855–56, 125 L.Ed.2d 556 (1993) (multiple prosecutions); *Brown v. Ohio*, 432 U.S. 161, 168, 97 S.Ct. 2221, 2226–27, 53 L.Ed.2d 187 (1977) (multiple prosecutions); *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182 (multiple punishments); *Gavieres v. United States,* 220 U.S. 338, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489 (1911) (multiple prosecutions). Under the *Blockburger* test, if each offense requires proof of an element that the other does not, the offenses are separate, and double jeopardy does not apply. *Blockburger*, 284 U.S. at 304, 52 S.Ct. at 182. If not, double jeopardy would bar multiple punishment or a subsequent prosecution. *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2855–56. The *Blockburger* test has been applied in multiple punishment cases in New Mexico case law, *see State v. Meadors*, 121 N.M. 38, 50, 908 P.2d 731, 743 (1995); *Swafford v. State*, 112 N.M. 3, 7–8, 810 P.2d 1223, 1227–28 (1991), and we believe our Supreme Court would apply the same analysis to multiple prosecution cases, *see Kennedy*, 120 N.M. at 627, 904 P.2d at 1052 (relying on *Blockburger* and citing *Dixon* ).

8. In *United States v. Dixon*, the Supreme Court extended the protection of the double jeopardy provision to nonsummary criminal contempt prosecutions and reaffirmed the *Blockburger* test as the proper method for determining whether the double jeopardy bar applies. *Dixon*, 509 U.S. at 696, 113 S.Ct. at 2855–56. In so doing, the Court overruled *Grady v. Corbin*, 495 U.S. 508, 521–22, 110 S.Ct. 2084, 2093, 109 L.Ed.2d 548 (1990), and rejected the "same conduct" test which that decision had added to the *Blockburger* analysis. Under *Grady*, a subsequent prosecution, permissible under *Blockburger*, might still be barred if "the government, to establish an essential element of an offense charged in that prosecution, will prove conduct that constitutes an offense for which the defendant has already been prosecuted." *Grady*, 495 U.S. at 521–22, 110 S.Ct. at 2093. Although the *Dixon* opinion approved *Blockburger* as the appropriate test, the Court was unable to agree as to the method of application; five separate opinions address that issue. There was also no majority opinion by the Court on whether *Blockburger* should be

the only test to be used in determining whether a double jeopardy violation has occurred.

9. In this case, Defendant was convicted of contempt, a misdemeanor, for violating the domestic violence protective order and sentenced to jail time. *See* § 40–13–6(E); NMSA 1978, § 31–19–1 (Repl.Pamp.1994). Subsequently, Defendant was indicted and charged with violations of the New Mexico criminal statutes against stalking and harassment. *See* NMSA 1978, §§ 30–3A–2 (Repl. Pamp. 1994), 30–3A–3 (Cum.Supp.1996). In district court, Defendant argued successfully that the double jeopardy holding in *Dixon* was sufficiently similar to this case so that subsequent prosecution of the stalking and harassment charges would be barred. In response, the State referred the court to the *Blockburger* discussion in *Swafford* and argued that under that analysis a second prosecution would not be prohibited in this case. *See Swafford*, 112 N.M. at 8–9, 810 P.2d at 1228–29. We agree that resolution of this case turns on a proper application of *Dixon* to the facts of this case. There is no doubt that in this case Defendant was faced with a subsequent prosecution based partially on the same conduct that underlay the contempt conviction. The question is whether the multiple prosecutions were for the "same offense" within the meaning of the Double Jeopardy Clause.

10. In *Dixon*, the Supreme Court consolidated two cases in which the defendants, Dixon and Foster, had been tried for criminal contempt for violating court orders that prohibited them from engaging in conduct that was the subject of later criminal prosecutions. 509 U.S. at 691–93, 113 S.Ct. at 2853–54. Dixon had been arrested for second-degree murder and released on bond. *Id.* at 691, 113 S.Ct. at 2853. As a condition of his pretrial release, he was enjoined from committing "any criminal offense" and warned that a violation of the order's terms would lead to prosecution for contempt of court. *Id.* Dixon was later indicted for possession of cocaine with intent to distribute.

*Id.* At a contempt hearing, the court determined that Dixon had violated the terms of his release, found him guilty of contempt, and sentenced him to 180 days in jail. *Id.* at 691–92, 113 S.Ct. at 2853–54. Dixon later successfully moved to dismiss the cocaine indictment on the basis of double jeopardy and the government appealed the ruling. *Id.* at 692–93, 113 S.Ct. at 2853–54. The Supreme Court held that the subsequent prosecution of Dixon violated the Double Jeopardy Clause. *Id.* at 712, 113 S.Ct. at 2864.

11. The Foster case is similar to the case before us, because the court order he was found to have violated was a protection order his estranged wife had obtained. *Id.* at 692, 113 S.Ct. at 2853–54. At the hearing for alleged violations of the protection order, the trial judge instructed the wife that to prove contempt she would have to prove that there was a protection order and that an assault, as defined by the criminal code, occurred.[1] *Id.* at 693, 113 S.Ct. at 2854. Foster was found guilty of criminal contempt for assault. *Id.* Foster was later indicted for various offenses against his wife including the assault for which he had been convicted of criminal contempt. *Id.* Foster filed a motion to dismiss on the grounds of double jeopardy, which was denied by the trial court; he then appealed the ruling. The *Dixon* opinion concluded that the subsequent prosecution for the assault charge violated double jeopardy under the *Blockburger* test. *Id.* at 712, 113 S.Ct. at 2864.

12. Applying *Dixon* to the case before us, we examine the elements of the violations of the Order and compare those to the elements of the substantive criminal charges. At the contempt hearing in district court, following Wife's testimony about the events of July 20, 1994, the court found that the Order had been violated wilfully and intentionally by Defendant. The minute order issued by the district court does not indicate the basis for the finding of contempt.

---

1. As the opinion noted, it is not obvious that the word "assault" in the protective order had the same meaning as assault in the criminal code, but the trial judge had construed the word in that manner at the contempt hearing and that determination was not appealed. *See Dixon*, 509 U.S. at 700 n. 3, 113 S.Ct. at 2858 n. 3.

13. The elements of the criminal charges for which Defendant was later indicted, stalking and harassment, are detailed in Sections 30–3A–2 and 30–3A–3. Stalking requires proof that a person knowingly pursued "a pattern of conduct that poses a credible threat to another person and that is intended to place that person in reasonable apprehension of death, bodily harm, sexual assault, confinement or restraint." Section 30–3A–3(A). Additionally, there must be proof that the stalker committed, on more than one occasion, one of the following acts: followed a person, placed a person under surveillance, or harassed a person. *Id.* Harassment requires proof that a person knowingly pursued "a pattern of conduct that is intended to annoy, seriously alarm or terrorize another person" to the extent that a reasonable person would "suffer substantial emotional distress." Section 30–3A–2(A).

14. Comparing the elements of the Order violation to the elements of the criminal offenses, we find that each offense contains at least one element that the other does not. The Order required Defendant not to abuse Wife which included, among other examples, "harassing" and "stalking." This condition could be violated by a single act under the plain meaning of the words "stalk" and "harass." The Order does not require that the element of a pattern of conduct be proved as do both the stalking and harassment statutes. The Order may be violated by the parties talking, visiting, or contacting each other or by their being within 100 yards of each other's home or workplace. These elements of the Order violation would require proof of facts that are not necessary to prove the criminal charges of stalking or harassment.

15. Thus, based on our review of the elements of each offense, we conclude that double jeopardy was not a bar to the subsequent prosecution for stalking and harassment, and the district court erred in so holding. At the hearing on Defendant's motion to dismiss, the district court appears to have been persuaded by the argument that the same incident underlies both the contempt convictions and the criminal indictments. Under *Dixon,* however, "same conduct" is not the proper test for evaluating double jeopardy claims.

16. This approach is consistent with that taken by the other courts that have addressed this question. In *Commonwealth v. Yerby,* 544 Pa. 578, 679 A.2d 217 (1996) and *State v. Miranda,* 644 So.2d 342 (Fla.Dist.Ct. App.1994), the courts applied *Dixon* in the context of contempt proceedings for violations of domestic violence protection orders and subsequent criminal prosecutions to determine whether double jeopardy was implicated.

## B. Legislative Intent

17. As previously noted, the *Dixon* Court could not agree on whether the same elements test would be the sole means of making a double jeopardy analysis. Our Supreme Court has considered legislative intent when it has undertaken double jeopardy analysis in the context of multiple punishments. *Swafford,* 112 N.M. at 9, 810 P.2d at 1229. We need not resolve the debate articulated in the *Dixon* opinion because in this case there is no question that the legislature intended to protect different interests. The Family Violence Protection Act states that its remedies shall not be exclusive in Section 40–13–6(G): "In addition to charging the person with violating an order of protection, a peace officer shall file all other possible criminal charges arising from an incident of domestic abuse when probable cause exists," and (H): "The remedies provided in the Family Violence Protection Act are in addition to any other civil or criminal remedy available to the petitioner."

## C. Burden of Persuasion

18. Defendant argues that in successive prosecution cases the burden of persuasion should be on the state, not the defendant, to show that the two offenses are not the same for double jeopardy purposes. Defendant relies upon *United States v. Ragins,* 840 F.2d 1184, 1188–89 (4th Cir.1988), and other conspiracy cases for this proposition. *See United States v. Loyd,* 743 F.2d 1555 (11th Cir.1984); *United States v. Bendis,* 681 F.2d 561 (9th Cir.1981); *United States v. Booth,* 673 F.2d 27 (1st Cir.1982); *United*

*States v. Jabara,* 644 F.2d 574 (6th Cir.1981); *United States v. Castro,* 629 F.2d 456 (7th Cir.1980); *United States v. Stricklin,* 591 F.2d 1112 (5th Cir.1979); *United States v. Tercero,* 580 F.2d 312 (8th Cir.1978); *United States v. Inmon,* 568 F.2d 326 (3d Cir.1977); *United States v. Mallah,* 503 F.2d 971 (2d Cir.1974). However, *Ragins* addresses double jeopardy in the context of successive conspiracy charges arising from the same criminal offense. In those circumstances, the court in *Ragins* found the *Blockburger* test inadequate, because the government could subdivide a single criminal conspiracy into multiple counts that would facially satisfy a same elements test. *Ragins,* 840 F.2d at 1188. In *Ragins,* the court adopted a "totality of the circumstances" test to determine whether two conspiracy charges actually constituted two offenses. *Id.* at 1188–89. *Ragins* also shifted the burden of proof to the government to show that there are two separate offenses. *Id.* at 1192. The court reasoned that at the point of a pretrial double jeopardy challenge in a conspiracy case, only the government knows which facts will be offered to support which conspiracy charge. *Id.* Thus, under the *Ragins* approach, once a defendant has made a non-frivolous showing that an indictment charges him with an offense for which he has already been placed in jeopardy, the burden of proof shifts to the government. *Id.*

19. We need not determine here the continuing viability of that method of analysis with respect to the particular challenges of applying double jeopardy in multiple conspiracy cases. What is clear is that in the context of this case, the *Blockburger* test does suffice; we see no need to shift the burden of persuasion away from Defendant. Parenthetically, we note that the Court of Appeals for the Tenth Circuit has consistently held that the Defendant has the burden, even in cases decided after *Ragins,* in the federal conspiracy context. *See United States v. Sasser,* 974 F.2d 1544, 1549 (10th Cir.1992); *United States v. Jones,* 816 F.2d 1483, 1486 (10th Cir.1987); *United States v. Puckett,* 692 F.2d 663, 668 (10th Cir.1982).

### III. CONCLUSION

20. In granting Defendant's motion to dismiss, the district court had its focus misdirected away from the statutory elements of the offenses and toward the conduct involved in the underlying occurrence, a method of analysis that was rejected by the Supreme Court when it overruled *Grady.* In this respect the court erred as a matter of law. Application of the *Blockburger* test to the facts of this case persuades us that no double jeopardy violation occurred, and accordingly, we reverse and remand so that the indictments against Defendant for stalking and harassment can be reinstated.

21. IT IS SO ORDERED.

APODACA and WECHSLER, JJ., concur.

