1998-NMCA-133

967 P.2d 454

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Gregory Lawrence POWERS,
Defendant–Appellant.**

Nos. 17751, 17963.

Court of Appeals of New Mexico.

July 23, 1998.

Certiorari Granted, No. 25,316,
Sept. 11, 1998.

Tom Udall, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, David Henderson, Assistant Appellate Defender, Santa Fe, for Appellant.

## OPINION

ARMIJO, J.

{1} Defendant appeals the judgment and sentence entered after a jury found him guilty of battery, false imprisonment, and attempted criminal sexual penetration (CSP) in the second degree. Defendant was previously held in contempt of court by a domestic relations court for violating an order prohibiting domestic violence. Defendant asserts that his subsequent prosecution violates the prohibition against double jeopardy found in the Fifth Amendment to the United States Constitution and Article II, Section 15 of the New Mexico Constitution. We address three issues: (1) whether a jurisdictional exception to the double jeopardy prohibition applies in this case; (2) if not, whether the constitutional protection against double jeopardy bars a second prosecution for other crimes arising from the same incident, and involving many of the same facts, which led to Defendant's conviction for contempt; and (3) whether the constitutional protection against double jeopardy bars further prosecution for the kidnapping or false imprisonment alleged in Count 1 when the jury returned a verdict finding Defendant guilty of false imprisonment after the trial court orally declared a mistrial on that count.

{2} Only our discussion of the second issue warrants publication. In this opinion, we reverse Defendant's conviction for battery based on the federal approach to double jeopardy articulated by Justice Scalia in *United States v. Dixon*, 509 U.S. 688, 698–700, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993), and we affirm Defendant's conviction for attempted CSP in the second degree based on the independent grounds provided by our state con-

stitution. In a separate memorandum opinion filed concurrently with this opinion, we have determined that a jurisdictional exception to the Double Jeopardy Clause does not apply in this case, and the State may retry Defendant on the charges of kidnapping and the lesser included offense of false imprisonment.

## I. BACKGROUND

### A. *The Incident of August 23, 1994*

{3} On August 2, 1994, the victim obtained a temporary restraining order from the domestic relations court under the Family Violence Protection Act, NMSA 1978, §§ 40–13–1 to –8 (1987, as amended through 1993), after Defendant allegedly assaulted her with a screwdriver. After a hearing on August 16, 1994, the domestic relations court entered an Order Prohibiting Domestic Violence (OPDV).

{4} On August 23, 1994, while the victim was delivering auto parts to a car dealership for her employer, she spotted Defendant following her. As she arrived, Defendant drove up beside her, opened the door of her truck, and ordered her to get out. When she hesitated, Defendant grabbed her and held something to her back or neck. The victim yelled to some people nearby to call the police, telling them that she had a restraining order on Defendant. Defendant pushed her into the passenger side of his car. He grabbed her by the leg and climbed through the passenger side of his car, pulling her leg and hair.

{5} At this point, several men who worked at the dealership came out to investigate the disturbance. The victim was screaming that Defendant would kill her. One of the men attempted to talk to Defendant and unsuccessfully tried to remove the keys from the ignition. Defendant started the car and backed out of the parking lot very rapidly. Both doors of the car remained open. Two of the men pulled on the driver's door, hoping to keep the car from moving, but the door bent back on its hinges. The car ran over a small embankment, twisting the driver's door upward "like a flag."

{6} As Defendant's vehicle accelerated down the street, the victim's feet were dragged along the pavement for a distance. The car door bruised her leg before she was able to pull it inside. Several men jumped into a car and began to chase Defendant's damaged vehicle across town through traffic at high speeds. Eventually, they gave up the chase because it was too dangerous.

{7} Defendant drove the victim to a remote park area where he ordered her to get out of the car. He then ordered her to take off her clothes and removed some of them himself. He told her to lie down, started to remove his pants, and asked her if she "wanted" him. At this point, Defendant reportedly heard the sound of a nearby car door slamming and told the victim to put her clothes back on.

{8} Defendant ordered the victim to get back into the car, and he then drove toward the city of Bernalillo. The victim testified at Defendant's criminal trial that Defendant threatened her by telling her to drop the OPDV or he would kill her. Once in Bernalillo, he ordered her to call the Albuquerque police, her place of work, and the car dealership to advise them that the incident at the car dealership was all a "practical joke." The victim testified that she made the calls because she feared for her life. After making the calls, Defendant drove her back to his apartment. He repeated his threat to kill her if she did not drop the OPDV. Defendant eventually released the victim. He was arrested outside his apartment later that day for violating the terms of the OPDV.

### B. *The Contempt Proceeding*

{9} On August 24, 1994, the day after Defendant was arrested, the domestic relations court held a hearing regarding the violation of the OPDV. Both Defendant and the victim appeared pro se and testified under oath; there were no other witnesses present, and the district attorney was not involved. The victim recounted the attack at the car dealership and the events that followed. Defendant admitted that the incident had occurred but explained that he had just wanted to take the victim in his car and talk to her about his suspicion that their child was being

abused. Defendant also offered a different account of what happened at the park area; he did not admit to forcing the victim to disrobe there.

{10}  After hearing from both parties, the domestic relations court stated to Defendant: "I don't know if they're going to charge you with a felony or not, but I suspect they will be. [T]hat's not my responsibility; that's up to the District Attorney's Office." The domestic relations court then held Defendant in contempt of court and entered a minute order stating as follows: "[Defendant] having admitted to several violations of the [OPDV, Defendant] is hereby adjudged in contempt of the Court's [OPDV] and is hereby ordered to serve 90 days in the Bernalillo County Detention Center...."

{11}  The District Attorney's Office, which was not given notice of the contempt hearing or made a party to that proceeding, filed a grand jury indictment against Defendant on August 31, 1994. The indictment charged Defendant with kidnapping (Count 1), attempt to commit CSP in the second degree (Count 2), and aggravated battery (Count 3). On April 5, 1995, Defendant moved to dismiss these charges on grounds that they placed him in double jeopardy in violation of the Fifth Amendment of the United States Constitution and Article II, Section 15 of the New Mexico Constitution, because he already had been convicted and punished for the same acts as a result of the contempt proceeding in domestic relations court. The trial court denied the motion. After a series of extensions, Defendant was tried before a jury in July 1996. The jury found him guilty of battery, false imprisonment, and attempted CSP in the second degree. Defendant filed two appeals which were consolidated by order of this Court.

## II.  DISCUSSION

{12}  Because jeopardy attaches to the nonsummary criminal contempt proceedings, *see Dixon*, 509 U.S. at 696, 113 S.Ct. 2849, we must examine whether Defendant's subsequent prosecution for kidnapping, false imprisonment, attempted CSP, and battery was barred by the constitutional protection against double jeopardy. The Double Jeopardy Clauses of the United States Constitution and the New Mexico Constitution provide that no person shall "be twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. These provisions protect against successive prosecutions for the same offense after a defendant has been acquitted or convicted; they also protect against multiple punishments for the same offense. *See Swafford v. State*, 112 N.M. 3, 7, 810 P.2d 1223, 1227 (1991) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). In the context of successive prosecutions, the United States Supreme Court held in *Dixon* that the scope of the Fifth Amendment's prohibition on double jeopardy is to be measured exclusively by the "same elements" test articulated in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), thereby overruling the more expansive "same conduct" test announced in *Grady v. Corbin*, 495 U.S. 508, 521–22, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990). *See Dixon*, 509 U.S. at 703–04, 113 S.Ct. 2849 (opinion of Justice Scalia, in which Justice Kennedy joined), 713–14, 113 S.Ct. 2849 (opinion of Justice Rehnquist, in which Justice O'Connor and Justice Thomas joined).

{13}  In the present case, Defendant asserts that Article II, Section 15 of the New Mexico Constitution requires the application of the "same conduct" test articulated in *Grady*, in addition to the "same elements" inquiry. Under the "same conduct" test, Defendant contends that the contempt proceeding in domestic relations court serves as a bar to further prosecution for any crimes arising from the same conduct for which he was previously prosecuted in that contempt proceeding. *See Grady*, 495 U.S. at 521–22, 110 S.Ct. 2084. The issue was preserved below. *See State v. Gomez*, 1997–NMSC–006, ¶ 23, 122 N.M. 777, 932 P.2d 1 (requirements for preserving state constitutional issue for which there is no established precedent).

### A.  *Analysis of Federal Law*

{14}  Under the interstitial approach to state constitutional interpretation articulated

by the New Mexico Supreme Court in *Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1, we must first determine whether the successive prosecution of Defendant was barred by federal law. We recently applied the federal analysis, as articulated by Justice Scalia in *Dixon*, 509 U.S. at 698–700, 113 S.Ct. 2849, to a similar claim in *State v. Gonzales*, 1997–NMCA–039, ¶ 9, 123 N.M. 337, 940 P.2d 185. Under this approach, "we examine the elements of the violations of the [OPDV] and compare those to the elements of the substantive criminal charges." *Id.* at ¶ 12, 123 N.M. 337, 940 P.2d 185. We apply the same approach here.

{15} As in *Gonzales*, 1997–NMCA–039, ¶ 2, 123 N.M. 337, 940 P.2d 185, the OPDV in the present case prohibits Defendant from "harassing, restraining, assaulting, swearing at, threatening, destroying property, throwing things at, following, making harassing telephone calls, causing physical injury to, battering in any manner or stalking" the victim. The August 24 minute order imposes a sanction which is generally classified as indirect criminal contempt arising from the court's authority to punish Defendant for violating the OPDV. *See generally* Rule 5–902 NMRA 1998. However, the minute order does not expressly state which elements of the OPDV formed the basis for the domestic relations court's finding of contempt, except to say that Defendant "admitted to several violations of the [OPDV], entered August 2, 1994."[1]

{16} Further, unlike the proceedings at issue in *Dixon*, 509 U .S. at 691–93, 113 S.Ct. 2849, in the present case neither the language in the OPDV nor the domestic relations court's oral instructions contain any specific reference to statutorily defined criminal offenses as required elements of the contempt. Thus, it is not obvious that the language in the OPDV has the same meaning as that used in the criminal statutes. *See id.*

at 700 n. 3, 113 S.Ct. 2849; *cf.* *State v. Padilla*, 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492 (distinguishing between civil and criminal battery).

■ {17} Nonetheless, the trial court found that the provision in the OPDV which prohibits "battering in any manner" included all the elements in the statutorily defined criminal offense of battery, and that Defendant was held in contempt for violating this provision of the OPDV. We cannot say that these findings are unsupported by the evidence in the record, which includes the extraordinarily broad definition of battery included in the OPDV. Hence, under the specific circumstances of this case, we conclude that the battery charges against Defendant "did not include any element not contained in his previous contempt offense." *Dixon*, 509 U.S. at 700, 113 S.Ct. 2849.[2]

■ {18} We do not reach the same conclusion with respect to the other offenses. Although the OPDV includes an element of "restraining" the victim, it does not contain the element of "force or deception, with intent that the victim ... be held to service against the victim's will" that is required for the crime of kidnapping. NMSA 1978, § 30–4–1(A)(3) (1973); *see also* UJI 14–403 NMRA 1998. The OPDV also does not contain all the elements of false imprisonment because this crime may result from either confinement or restraint, and the confinement or restraint must be intentional, without the victim's consent, and with knowledge that the perpetrator has no lawful authority. *See* NMSA 1978, § 30–4–3 (1963); UJI 14–401 NMRA 1998. The term "restraining" as it appears in the OPDV does not bear the precise meaning articulated in the kidnapping and false imprisonment statutes, and the trial court did not so find. *See Dixon*, 509 U.S. at 700 n. 3, 113 S.Ct. 2849.

---

1. There is a clerical error in the minute order. It refers to an order issued on "August 2, 1994," as the OPDV, but the OPDV was issued on August 16. However, it is clear from the context that the domestic relations court was referring to the August 16 order.

2. This conclusion with respect to the specific circumstances of this case should not be interpreted as implying that a criminal prosecution for battery can never follow a prosecution for indirect criminal contempt involving the violation of an order which prohibits "battering." *See infra* pp. 121–122, ¶¶ 31–33, 967 P.2d pp. 461–462, ¶¶ 31–33.

{19} Insofar as the crime of attempted CSP in the second degree (commission of a felony) incorporates the elements of kidnapping or false imprisonment, that crime also contains elements which are not listed in the OPDV. *See* NMSA 1978, § 30–9–11(D)(4) (1993); UJI 14–954 NMRA 1998; *cf.* NMSA 1978, § 30–28–1 (1963) (defining elements of attempt to commit a felony). Moreover, both attempted CSP in the second degree and attempted CSP in the third degree include the element of attempting to cause "a person to engage in sexual intercourse, cunnilingus, fellatio or anal intercourse or the causing of penetration." Section 30–9–11(A); UJI 14–954; UJI 14–942 NMRA 1998. This element is not contained in the OPDV.

{20} Under the specific circumstances of this case, we conclude that only Defendant's subsequent prosecution for battery is barred by the Double Jeopardy Clause of the Fifth Amendment. However, since federal law does not bar Defendant's successive prosecution for attempted CSP, kidnapping, or the underlying offense of false imprisonment, we must examine whether Defendant is protected against successive prosecution for these offenses under our state constitution. *See Gomez*, 1997–NMSC–006, ¶ 19, 122 N.M. 777, 932 P.2d 1.

### B.  *Analysis of New Mexico Law*

{21} We may depart from the federal analysis and afford broader protection under the New Mexico Constitution if we determine that: (1) the federal analysis is flawed or undeveloped; (2) there are distinctive state characteristics; or (3) there are structural differences between state and federal government. *See Gomez*, 1997–NMSC–006, ¶¶ 19–20, 122 N.M. 777, 932 P.2d 1; *see also State v. Breit*, 1996–NMSC–067, ¶ 25, 122 N.M. 655, 930 P.2d 792 (departure from federal double jeopardy principles is warranted when those principles change a standard formerly adopted by New Mexico courts or begin to encroach on sanctity of state constitutional guarantees).

{22} Between the time *Grady* was decided in 1990 and when it was overruled in 1993, no New Mexico case was decided on the basis of the "same conduct" test and no New Mexi-co court recognized this standard as a guarantee afforded by the New Mexico Constitution. *See Swafford*, 112 N.M. at 7, 13, 810 P.2d at 1227, 1233 (recognizing that sole double jeopardy limitation on multiple punishments is legislative intent, even assuming *Grady*'s "same conduct" test is met); *State v. McGuire*, 110 N.M. 304, 309–10, 795 P.2d 996, 1001–02 (1990) (distinguishing *Grady* in a multiple punishment case); *State v. Charlton*, 115 N.M. 35, 39, 846 P.2d 341, 345 (Ct.App.1993) (same); *State v. Trevino*, 113 N.M. 804, 808, 833 P.2d 1170, 1174 (Ct.App. 1991) (same), *aff'd*, 116 N.M. 528, 534, 865 P.2d 1172, 1178 (1993); *State v. O'Kelley*, 113 N.M. 25, 27, 822 P.2d 122, 124 (Ct.App.1991) (distinguishing *Grady* in a successive prosecution case); *see also State ex rel. Schwartz v. Kennedy*, 120 N.M. 619, 625, 904 P.2d 1044, 1050 (1995) (multiple punishment case reserving question of whether New Mexico Double Jeopardy Clause provides broader protection than its federal counterpart under circumstance other than multiple punishment doctrine). Further, "[d]uring its brief life span, *Grady* was heavily criticized for being unsupported by precedent, for allowing unjust results, and for proving unworkable in practice." *State v. Kurzawa*, 180 Wis.2d 502, 509 N.W.2d 712, 721 (Wis.1994) (footnote omitted); *see also Dixon*, 509 U.S. at 704, 709, 113 S.Ct. 2849.

{23} In analyzing whether the "same conduct" test should be adopted under the New Mexico Constitution, we recognize that "[s]uccessive prosecutions, whether following acquittal or conviction, implicate double jeopardy values beyond those inherent in multiple punishment cases[.]" *Swafford*, 112 N.M. at 7, 810 P.2d at 1227. In multiple punishment cases, " 'the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.' " *Id.* (citation omitted). In contrast, successive prosecutions implicate the defendant's interest in repose under the finality of a judgment, as well as the interest in preventing prosecutorial overreaching or oppression and reducing the risk of erroneous conviction by way of a rehearsed trial. *See id.* These interests, however, are not absolute, but

must be balanced against "the countervailing interest of society in the orderly administration of justice[,]" which includes, for example, " 'giving the prosecution one complete opportunity to convict those who have violated its laws' " and " 'insuring that justice is meted out to offenders[.]' " *County of Los Alamos v. Tapia,* 109 N.M. 736, 742, 790 P.2d 1017, 1023 (1990) (citations omitted). We now examine whether, under the circumstance presented here, the "same conduct" test is necessary under the New Mexico Constitution in order to safeguard any of the foregoing interests or the proper balancing of those interests.

■ {24} Society's interest in the orderly administration of justice is particularly strong in the special circumstances of a contempt proceeding following the violation of an OPDV. As opposed to criminal penalties, OPDVs are prospective. They explicitly seek to alter the future behavior of the abusive household member. *See* § 40–13–5; David M. Zlotnick, *Empowering the Battered Woman: The Use of Criminal Contempt Sanctions to Enforce Civil Protection Orders,* 56 Ohio St. L.J. 1153, 1192 (1995). "Often the only way of compelling compliance with [such] orders is through the sanction of contempt." Rule 5–902, at 804. For this reason,

> [t]he power of courts to punish for contempts is . . . essential to the preservation of order in judicial proceedings and to the enforcement of obedience to their writs, orders, and mandates, and consequently to the due administration of justice. The exercise of this power is as old as the English history itself and has always been regarded as a necessary incident and attribute of courts.

*State v. Magee Pub. Co.,* 29 N.M. 455, 469–70, 224 P. 1028, 1029 (1924), *overruled in part on other grounds by State v. Morris,* 75 N.M. 475, 486, 406 P.2d 349, 357 (1965); *see also* Rule 5–902, at 804 (contempt proceedings protect court's interest in vindicating authority of its orders); *Dixon,* 509 U.S. at 741–43, 113 S.Ct. 2849 (Blackmun, J., dissenting) (same); *People v. Szpara,* 196 Mich. App. 270, 492 N.W.2d 804, 805 (Mich.Ct.App. 1992) (same).

{25} Moreover, a domestic abuse victim's important interest in obtaining *immediate* protection from an abusive household member through contempt proceedings is entitled to considerable weight in our analysis. *Cf.* N.M. Const. art. II, § 24(A)(3) (crime victims have "right to be reasonably protected from the accused throughout the criminal justice process"); §§ 40–13–1 to –8 (providing remedies for victims of domestic abuse). Contempt proceedings are well suited to providing domestic abuse victims with immediate protection following the violation of an OPDV. *See* Zlotnick, *supra,* at 1199–1200. For example, there is generally no right to trial by jury in a contempt proceeding, and thus jury selection and other time consuming aspects of jury trials usually can be avoided. *See id.; cf. In re Herkenhoff,* 1997–NMSC–007, 122 N.M. 766, 769, 931 P.2d 1382, 1385 (if punishment for contempt is imprisonment for less than six months or fine of less than $1,000, jury trial is not required). In the present case, the contempt action was prosecuted by the victim and tried in the domestic relations court only one day after the violation of the OPDV occurred.

{26} Both the domestic relations court's ability to vindicate the authority of its orders and the domestic abuse victim's ability to obtain protection from immediate harm are important to the orderly administration of justice. If Defendant can use the contempt proceedings as a mechanism for preventing the State from subsequently pursuing any further criminal charges against him, then these important State interests may be impaired by the dilemma of whether to:

> (a) seek contempt and risk cutting off the possibility of subsequent criminal prosecution, perhaps even if unsuccessful, or (b) seek criminal prosecution and thereby risk not only losing any ability to tailor the result of the contempt proceeding to compel the desired conduct, but also risk that the punishment assessed in the criminal prosecution would itself cut off the respondent's ability to comply with the [domestic abuse] order.

*State v. Rhodes,* 938 S.W.2d 192, 195 (Tex.Ct. App.1997) (Edelman, J. dissenting) (footnote omitted), *review granted* (Tex. May 21, 1997).

{27} In contrast to the State's strong interest in avoiding this dilemma, Defendant's expectation of finality is significantly diminished under these circumstances. The contempt proceeding against Defendant arose in the context of an OPDV providing prospective relief which extends beyond his ninety-day sentence for contempt that began on August 24, 1994. Under the terms of the OPDV, the parties were to return for a status hearing on October 17, 1994, and the OPDV did not expire until February 16, 1995. The victim also could petition to extend the OPDV for an additional six months. *See* § 40-13-6(B). Moreover, before holding Defendant in contempt in this case, the domestic relations court informed him that "I don't know if they're going to charge you with a felony or not, but I suspect they will be. [T]hat's not my responsibility; that's up to the District Attorney's Office." Under these circumstances, Defendant could not reasonably expect that the contempt proceedings would relieve him of any further obligation to answer in court for the incident of August 23, 1994.

{28} In addition, the successive prosecution of Defendant for kidnapping, false imprisonment, and attempted CSP cannot be characterized as an instance of prosecutorial overreaching or oppression. Although it is true that the domestic relations court and the District Attorney's Office are both arms of the State for double jeopardy purposes, in this case their respective roles were so separate and distinct as to severely limit the extent to which the contempt proceeding could be used by the State as an opportunity to rehearse its trial strategy for the subsequent felony charges. As noted above, the domestic relations court had no role in the subsequent prosecution because the decision whether to prosecute Defendant on substantive criminal charges relating to the August 23 incident was "up to the District Attorney's Office." The District Attorney's Office did not receive notice of, much less participate in, the contempt proceeding. Rather, the contempt hearing simply involved the victim and Defendant telling their respective sides of the story to the domestic relations court; there was no cross-examination, no jury, and no evidentiary objections were raised. Un-

der these circumstances, we cannot say that the contempt proceeding presented the State with the kind of unfair opportunity for rehearsal that would significantly increase the risk of an erroneous conviction in a subsequent prosecution.

{29} For these reasons, our recognition that there may be different interests at stake in successive prosecution cases than in multiple punishment cases does not mean that we must depart from the "same elements" test in order to comply with the Double Jeopardy Clause in Article II, Section 15 of the New Mexico Constitution. *See Kurzawa,* 509 N.W.2d at 721-22. We conclude that, on balance, the "same elements" test adequately protects Defendant's right to be free from double jeopardy in the context of successive prosecutions governed by our state constitution, provided that the elements of indirect criminal contempt are determined in light of the particular court order being violated rather than in the abstract. *See Gonzales,* 1997-NMCA-039, ¶¶ 7, 12, 123 N.M. 337, 940 P.2d 185; *Commonwealth v. Yerby,* 544 Pa. 578, 679 A.2d 217, 220-22 (Pa.1996).

{30} Applying the test in this manner, we determined from our analysis of federal law that the elements required to support Defendant's contempt conviction differ from the elements of kidnapping, false imprisonment, and attempted CSP. We reach the same results under our state constitution. Therefore, we conclude that Defendant's subsequent prosecution for kidnapping, false imprisonment, and attempted CSP is not barred by Article II, Section 15 of the New Mexico Constitution.

{31} Finally, this case presents several lessons for trial courts that are faced with the task of determining the double jeopardy consequences of prosecuting an abusive household member for contempt. We note that some courts may have approved the use of forms which are the same or similar to the OPDV at issue in this case. *See, e.g.,* LR13-Form E-5 NMRA 1998. These courts may wish to consider revising their local rules and forms in order to avoid the problems encountered here.

122

{32} In making such revisions, courts should keep in mind that a restraining order issued under the Family Violence Protection Act must "specifically describe the acts the court has ordered the respondent to do or refrain from doing." Section 40–13–5(A). However, we do not interpret Section 40–13–5(A) as requiring any specific reference to statutorily defined criminal offenses such as that found in the order at issue in *Dixon,* 509 U.S. at 691, 698, 113 S.Ct. 2849, that led to a double jeopardy violation in the Scalia plurality opinion. We do not recommend that level of specificity. As noted in *Dixon,* without such specific references to a criminal statute, it is not obvious that the words used in the restraining order have the precise meaning articulated in that criminal statute. *See id.* at 700 n. 3, 113 S.Ct. 2849; *cf. Padilla,* 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492 (distinguishing civil battery from criminal battery).

 {33} In addition to the language in the restraining order itself, double jeopardy consequences may spring from instructing a party that a contempt conviction must be supported by proof of the elements defined in a criminal statute. *See Dixon,* 509 U.S. at 691–92, 700, 113 S.Ct. 2849. Thus, courts should exercise extreme care in identifying which of the provisions of the restraining order form the basis for the contempt charge, and what elements are required to show that those provisions were violated. *Cf.* LR2–134 NMRA 1998 (ex parte order to show cause why a party should not be held in contempt must identify verbatim the portion of court's prior order on which contempt charge is based). For example, in some cases, a violation of the "no contact" or "stay away" provision in a restraining order may be sufficient to support a contempt charge without precluding a subsequent prosecution on double jeopardy grounds. *See, e.g., People v. Allen,* 868 P.2d 379, 385 n. 15 (Colo. 1994) (en banc) (no double jeopardy bar to subsequent prosecution for substantive crime where court expressly premised its finding of contempt on violation of stay-away provision of restraining order); *People v. Stenson,* 902 P.2d 389, 391–92 (Colo.Ct.App.1994) (same for no-contact provision). Thus, courts may wish to specify whether or not they are construing the elements of the criminal contempt charge as incorporating statutory criminal offenses as defined in our criminal code. An interpretation to that effect by the trial court would prove helpful in applying the same elements test.

### III. CONCLUSION

{34} In this opinion, for the foregoing reasons, we reverse Defendant's conviction and sentence for battery, and we affirm Defendant's conviction and sentence for attempted CSP in the second degree. By separate memorandum opinion filed concurrently with this opinion, we determined that a jurisdictional exception to the Double Jeopardy Clause does not apply in this case, and the State may retry Defendant on the charges of kidnapping and the lesser included offense of false imprisonment. We remand for further proceedings consistent with these opinions.

{35}  **IT IS SO ORDERED.**

DONNELLY and BOSSON, JJ., concur.

1998-NMCA-139