3 P.3d 689

2000–NMCA–052

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**David CLARK, Defendant–Appellant.**

No. 20,131.

Court of Appeals of New Mexico.

April 25, 2000.

Certiorari Denied, 26,339,
June 16, 2000.

Patricia A. Madrid, Attorney General, Ralph E. Trujillo, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Donna Bevacqua, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

BOSSON, J.

{1} Defendant, David Clark, stole horses from within the boundaries of the Navajo Nation, and was later apprehended in Gallup, New Mexico, away from tribal lands, while transporting the horses for sale. He was charged and found guilty in district court of various crimes. Defendant raises eight issues on appeal; the two principal ones are: (1) whether New Mexico has jurisdiction to prosecute a Navajo defendant for crimes initiated within Indian country but continued outside of tribal boundaries within the State of New Mexico, and (2) whether convicting Defendant for both larceny of livestock and transporting stolen horses violates his right to be free of double jeopardy. We reverse on the double jeopardy issue, but affirm on jurisdiction. Remaining issues are discussed summarily in a companion memorandum opinion that does not merit publication.

## BACKGROUND

{2} Defendant, his brother, Melvin Clark, and his son-in-law, Gerald Kaufman, stole horses from within Navajo tribal territory and then drove the horses away from tribal lands into Gallup, New Mexico, where they were arrested with the horses. Defendant was charged and convicted of larceny of livestock, conspiracy to commit a felony, transporting stolen livestock, failure to produce a bill of sale, and transporting stolen horses without a certificate of inspection. Defendant originally entered into a plea agreement which placed him on probation. However, he violated the conditions of his probation, and the State moved to revoke Defendant's probation. Defendant, represented by a second attorney, then moved to set aside the original plea agreement on the ground that it contained an illegal banishment provision, and a new trial was ordered. Represented by a third attorney, Defendant was tried before a jury on June 24–25, 1998, and convicted on all counts. Defendant was subsequently sentenced in accordance with NMSA 1978, Section 31–18–17 (1993), because of a prior felony conviction. In addition to the two paramount issues of jurisdiction and double jeopardy, Defendant raises on appeal (1) whether the trial court abused its discretion in refusing to limit the State's cross-examination of a potential defense witness, (2) whether the police stop of Defendant's vehicle violated the United States Constitution, (3) whether the convictions were supported by substantial evidence, (4) whether a prior defense attorney provided ineffective assistance of counsel, (5) whether the State violated discovery rules, and (6) whether Defendant's due process rights to a fair trial were violated by the alleged impropriety of a former trial judge.

## DISCUSSION

### State Jurisdiction to Prosecute

{3} Defendant argued below, and now on appeal, that the State had no jurisdiction to prosecute him for a crime that occurred in Indian country. The trial court ruled that because Defendant was arrested outside of Indian country for crimes of a continuing nature, he was being prosecuted for a state crime over which the State did have jurisdiction.

{4} Relying on *United States v. Stands*, 105 F.3d 1565 (8th Cir.1997), Defendant argues that because the essential ele-

ments of larceny occurred within Navajo tribal lands, the federal government and not the State had jurisdiction in this case. The issue in *Stands,* however, was whether the federal court had jurisdiction over an offense that spanned two jurisdictions, not whether the state court might also have jurisdiction. While concluding that federal jurisdiction existed because much of the offense occurred in Indian country, the Eighth Circuit did not address the question of concurrent state jurisdiction. *See id.* at 1571. Defendant also argues, without any citation to authority, that ownership of the horses was a question for tribal law, not state law.

{5} Defendant correctly recites that the federal government has jurisdiction over certain "major" crimes listed in 18 U.S.C. § 1153 (1994), including larceny, when these crimes are committed by an Indian in Indian country. *See State v. Ortiz,* 105 N.M. 308, 310, 731 P.2d 1352, 1354 (Ct.App.1986). However, as the State points out, New Mexico has historically held that it also has jurisdiction over crimes that continue into State territory. *See Territory v. Harrington,* 17 N.M. 62, 66, 121 P. 613, 615 (1912). In *Harrington,* cattle were stolen from Navajo tribal lands and brought into New Mexico. The Territorial Supreme Court held that the trial court had jurisdiction to prosecute a cattle thief for larceny when the cattle were driven from tribal lands into the jurisdiction of the territory with continuing larcenous intent. The court stated:

> We are clearly of the opinion that where the original taking of the thing, upon which the charge of larceny is predicated, was at a place without the jurisdiction of the trial court, but within the state, and the thing was brought into the county within its jurisdiction, the intent to seal [sic] continuing, the thief carrying away the goods becomes guilty of a complete larceny in every county or locality into which he takes them while his intent to steal continues.

*Id.*

{6} We reaffirmed this principle of law in *State v. Stephens,* 110 N.M. 525, 526–27, 797 P.2d 314, 315–16 (Ct.App.1990). In *Stephens,* the defendants stole property in Tex-

as but were arrested and charged with larceny in New Mexico. *See id.* at 526, 797 P.2d at 315. We emphasized that when the unlawful possession continues "in the state into which the stolen property is brought[, it] constitutes a new caption and asportation—a new deprivation of the owner of his right to his property and its possession." *Id.* at 527, 797 P.2d at 316; *accord* P.H. Vartanian, Annotation, *Person Who Steals Property in One State or Country and Brings It into Another as Subject to Prosecution for Larceny in Latter,* 156 A.L.R. 862, 866 (1945); *see also State v. McKinley,* 30 N.M. 54, 56, 227 P. 757, 758 (1924) (stating when "property is stolen in one county and is taken or driven into and through other counties, with the larcenous intent still existing, a new and complete larceny is committed in each and all of said counties"). Accordingly, we hold that the trial court had jurisdiction to prosecute Defendant for larceny.

{7} Defendant also claims that the State had no jurisdiction to prosecute him for conspiracy, because the charge was bootstrapped onto the larceny conviction. We observe, first of all, that Defendant made no separate jurisdictional argument for conspiracy. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (stating issues "unsupported by cited authority will not be [considered] ... on appeal"). However, even had this issue been fully briefed, conspiracy, like larceny, can also be a continuing crime. *See State v. Villalobos,* 120 N.M. 694, 697, 905 P.2d 732, 735 (Ct.App. 1995) (stating that "a conspiracy may continue for an extended period of time and across jurisdictional lines"); *State v. Thoreen,* 91 N.M. 624, 633, 578 P.2d 325, 334 (Ct.App. 1978) (conspiracy to commit fraud in obtaining loan continues until loan is obtained). Because the conspiracy in this case involved larceny of livestock, which itself was continuing, the conspiracy continued until Defendant and his co-conspirators were arrested in Gallup. Thus, the State had jurisdiction to prosecute Defendant for conspiracy as well as larceny.

**Double Jeopardy Prohibition Against Multiple Punishments for the Same Offense**

{8} Defendant argues that his conviction for both transporting stolen livestock,

under NMSA 1978, § 30–18–6 (1963), and larceny of livestock, under NMSA 1978, § 30–16–1 (1987), violated the double jeopardy clause of the United States and New Mexico constitutions, which provide that no person shall "be twice put in jeopardy" for the same offense. U.S. Const. amend. V; N.M. Const. art. II, § 15. These provisions protect against multiple punishments for the same offense and against successive prosecutions for the same offense following acquittal or conviction. *See State v. Powers,* 1998–NMCA–133, ¶ 12, 126 N.M. 114, 967 P.2d 454. Defendant correctly states that when one offense is subsumed by the other, the trial court's imposition of concurrent sentences for separate convictions does not render a double jeopardy violation harmless, because " 'the second conviction, even if it results in no greater sentence, is an impermissible punishment.' " *State v. Pierce,* 110 N.M. 76, 87, 792 P.2d 408, 419 (1990) (quoting *Ball v. United States,* 470 U.S. 856, 865, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)).

{9} In *Swafford v. State,* 112 N.M. 3, 13–15, 810 P.2d 1223, 1233–35 (1991), our Supreme Court established a two-part test for determining whether separate convictions under different criminal statutes in the same trial are prohibited. Under this test, we ask first "whether the conduct underlying the offenses is unitary, i.e., whether the same conduct violates both statutes." *Id.* at 13, 810 P.2d at 1233. If the conduct is not unitary, but is separate and distinct, the inquiry ends and there is no double jeopardy. *See id.* at 14, 810 P.2d at 1234. If, however, the conduct can reasonably be said to be unitary, we must then determine "whether the legislature intended multiple punishments for unitary conduct." *Id.*

{10} Under *Swafford,* the first part of "the task is merely to determine whether the conduct for which there are multiple charges is discrete (unitary) or distinguishable." *Id.* "If two events are sufficiently separated by either time or space (in the sense of physical distance between the places where the acts occurred), then it is a fairly simple task to distinguish the acts." *Id.* at 13–14, 810 P.2d at 1233–34. The State argues that in this case the conduct was not unitary because the

larceny was complete before Defendant transported the stolen livestock into Gallup. Defendant argues, however, that the conduct was unitary because there was no separation in time or space between the larceny and the transporting; the larceny, if continuing, involved the same act of transporting stolen horses.

{11} Because Defendant was prosecuted for larceny of livestock in the State of New Mexico, and not for larceny within the Navajo Nation, the facts supporting both charges were that Defendant was caught in McKinley County, transporting five stolen horses in a trailer, taking them away from their rightful owner. New Mexico had no jurisdiction to prosecute Defendant for the larceny that occurred before the horses left Navajo tribal lands. Thus, both charges, larceny and transporting, were clearly supported by the same unitary conduct.

{12} Having determined that the conduct was unitary, we must next ask "whether the legislature intended multiple punishments for unitary conduct." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. The double jeopardy clause does not prevent the legislature from authorizing multiple punishments for the same criminal act prosecuted in a single proceeding. *See, e.g., Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); *State v. Nunez,* 129 N.M. 63, 78, 2 P.3d 264, 279 (1999). In determining legislative intent, we apply the test articulated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to the elements of each statute, to see "whether each provision requires proof of an additional fact which the other does not." Section 30–16–1 defines larceny as "the stealing of anything of value which belongs to another," and specifically provides that larceny of livestock is a third degree felony. While the common-law requirement of asportation does not appear in Section 30–16–1, the Uniform Jury Instruction for larceny requires the jury to find that (1) "[t]he defendant took and carried away [property] belonging to another," and (2) "[a]t the time he took this property, the defendant intended to permanently deprive the owner of it." UJI 14–1601 NMRA 2000.

Additionally, New Mexico case law has interpreted its larceny statutes as incorporating the requirement that a stolen item be carried away. *See Stephens,* 110 N.M. at 526–27, 797 P.2d at 315–16 (stating that larceny is a continuing crime in which unlawful possession and asportation deprive the owner of his right to property and its possession); *State v. Lopez,* 94 N.M. 349, 352, 610 P.2d 753, 756 (Ct.App.) (concluding that the language of a jury instruction should include, "the defendant took and carried away property 'without the consent of the owner' "(citation omitted)), *aff'd on other grounds,* 94 N.M. 341, 610 P.2d 745 (1980).

{13} In this case, Defendant was not just charged with larceny, but with larceny of livestock. In *State v. Pacheco,* 81 N.M. 97, 99, 463 P.2d 521, 523 (Ct.App.1969), this Court stated that "[a]t all times since 1884, New Mexico has consistently treated the larceny of livestock differently from the larceny of other things." This Court stressed that "the larceny of livestock statute was apparently enacted to protect the ownership thereof, to prevent a kind of larceny peculiarly easy of commission and difficult of discovery and punishment, and to protect the important industry of stock raising." *Id.* at 100, 463 P.2d at 524. Thus, in order for Defendant to have committed the crime of larceny of livestock, he must have carried the horses away from the place where he stole them. The term " '[c]arried away' means moving the property from the place where it was kept or placed by the owner." UJI 14–1603 NMRA 2000. As one commentator has observed,

> [t]he word 'carrying' in the expression 'carrying away' (the common law requirement of an asportation) is not to be taken literally, for one can be guilty of larceny of property which he cannot pick up in his hands, as by riding away a horse, leading away a cow, driving off in an automobile or pulling or pushing a heavy object along the ground.

2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 8.3(b), at 346 (1986).

{14} Section 30–18–6 defines transporting stolen livestock as "knowingly transporting or carrying any stolen or unlawfully possessed livestock or any unlawfully possessed game animal, or any parts thereof," and classifies it as a fourth degree felony. Like the larceny statute, transporting stolen livestock requires the carrying away of stolen livestock. Larceny of livestock contains the additional element of stealing the animals with the intent to permanently deprive the rightful owner of his property. However, transporting stolen livestock contains no element that larceny of livestock does not, and thus the elements of transporting stolen livestock are subsumed within the larceny statute when the subject is livestock. Applying the *Blockburger* test to the elements of the two statutes, we conclude that "one statute is subsumed within the other." *Swafford,* 112 N.M. at 14, 810 P.2d at 1234. Thus, "the inquiry is over and the statutes are the same for double jeopardy purposes—punishment cannot be had for both." *Id.*

{15} We hold that Defendant's conviction for transporting stolen livestock, when considered with his conviction for larceny of livestock, violates his constitutional right to be free of double jeopardy. Accordingly, we reverse the transporting stolen livestock conviction while affirming the conviction of larceny of livestock.

**CONCLUSION**

{16} We affirm the jurisdiction of the State to prosecute Defendant, based on these facts, for conspiracy and larceny. However, based on principles of double jeopardy, we reverse Defendant's conviction for transporting stolen livestock and remand for the district court to set aside the judgment and sentence pertaining to that conviction.

{17} **IT IS SO ORDERED.**

WECHSLER and BUSTAMANTE, JJ., concur.