1998-NMCA-148

968 P.2d 808

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Harold DAVIS, Defendant–Appellant.**

**No. 18,858.**

Court of Appeals of New Mexico.

Sept. 29, 1998.

Tom Udall, Attorney General, Max Shepherd, Assistant Attorney General, Santa Fe, NM, for appellee.

Reginald J. Storment, Albuquerque, NM, for appellant.

*OPINION*

WECHSLER, J.

{1}   The State charged Defendant Harold Davis with the petty misdemeanor of committing "neglect of a resident that results in no harm to the resident" in violation of Section 30–47–5(A) of the Resident Abuse and Neglect Act, NMSA 1978, §§ 30–47–1 to –10 (1990, as amended through 1997) (Act).  The complaint filed in the Metropolitan Court of Bernalillo County stated, among other details, that Defendant was the guardian of an eighty-year-old man who was living in an apartment located at Defendant's mother's house.

{2}   The metropolitan court found that Defendant was not the resident's legal custodian or guardian and dismissed the charge based on its conclusion that the Act does not impose a legal obligation upon "people who voluntarily provide aid and care to family, friends, renters, or neighbors."  Upon the State's appeal, the district court, after trial, found Defendant guilty.  Defendant appeals from the district court's final order on metropolitan court appeal.  He argues that the district court appeal violated his constitutional protection from double jeopardy, and that the evidence was insufficient to support the verdict.  We affirm.

*Facts*

{3}   The State charged Defendant by criminal complaint with neglect of a resident in violation of Section 30–47–5(A) in the Metropolitan Court of Bernalillo County.  The complaint alleged that Defendant was the guardian of an eighty-year-old man (the victim) who was living in an apartment of a house owned by Defendant's mother.  Defendant brought a motion to dismiss.  At the motion hearing, the metropolitan court granted Defendant's motion to dismiss based on its finding that Defendant did not come within the statutory definition of someone who provided care to a resident in a "care facility," and thus could not have violated the applicable statute.  The State timely appealed the court's decision to the district court.

{4}   At the trial in the district court, the State presented evidence from several wit-nesses.  The custodian of guardianship records for the Department of Veterans Affairs identified State's Exhibit No. 1 as a certificate entitling Defendant to receive benefits on behalf of the victim.  The witness explained that the Veteran's Administration uses this document to name an individual as the legal custodian or payee of benefits due a veteran.  The witness further stated that pursuant to the terms of the legal custodianship, the custodian is responsible for disbursing the funds the veteran receives to see that the veteran has a place to live in a reasonable manner, as well as food and clothes.

{5}   A Children, Youth and Families Department social worker testified that when she attempted to contact the victim, Defendant's mother informed her that he was locked in his apartment and only Defendant had the key, and that Defendant was the victim's legal guardian.  The social worker testified that when she finally made contact with the victim she observed that he appeared to be very thin, malnourished, and that he had not bathed in a number of days and smelled of urine.

{6}   A building code inspector employed by the City of Albuquerque testified that he conducted a code and safety inspection of the victim's apartment and discovered that (1) the back door was blocked by a refrigerator; (2) the windows were locked;  (3) there were numerous electrical code violations;  (4) the bathtub did not appear to have been used recently because it was cluttered with debris and insects;  (5) there was no food in the refrigerator or the apartment aside from a bag of Cheetos and a carton of milk;  (6) there were cockroaches throughout the apartment;  and (7) there was feces on the floor around the toilet.

{7}   A City of Albuquerque police officer, who accompanied the social worker and building inspector to the victim's apartment, confirmed the building inspector's observation of the apartment, adding that the whole place smelled of urine and feces.  The police officer also testified that Defendant admitted to her that he was the victim's guardian.

{8}   Finally, Assistant District Attorney Catherine Cameron, who represented the

State at the hearing on Defendant's motion to dismiss in the metropolitan court, testified that at the hearing Defendant stated under oath that he was solely responsible for every facet of the victim's life; including, his residence, food, medical care, transportation, bathing and laundry.

*Double Jeopardy Claim*

{9} Defendant contends that his trial and conviction in the district court violated his constitutional right to be free from double jeopardy under the New Mexico State Constitution because the metropolitan court heard evidence and granted his motion to dismiss. Although Defendant raises this argument for the first time on appeal, it is properly before this Court because it raises a jurisdictional issue. *See Gonzales v. Surgidev Corp.,* 120 N.M. 133, 138, 899 P.2d 576, 581 (1995) ("It is well settled that subject matter jurisdiction cannot be waived and may be raised for the first time on appeal.") *See also* N.M. Const. art. II, § 15.

{10} Defendant does not contend that the New Mexico State Constitution provides greater protection from double jeopardy than that provided by the Fifth Amendment to the United States Constitution. Our Supreme Court has determined that the double jeopardy provisions of the state and federal constitutions "are so similar in nature . . . that they should be construed and interpreted in the same manner." *State v. Rogers,* 90 N.M. 604, 606, 566 P.2d 1142, 1144 (1977). We are thus guided by federal and state case law interpreting the United States Constitution in concluding that Defendant's argument is without merit.

{11} The issue turns upon whether Defendant's double jeopardy protections attached in this case. If Defendant's constitutional rights applied, Defendant would be correct that the State would be prohibited from prosecuting him in district court for the same offense covered by the metropolitan court dismissal. *See United States v. Wilson,* 420 U.S. 332, 343–44, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957); *State v. Archuleta,* 112 N.M. 55, 58, 811 P.2d 88, 91 (Ct.App.1991).

{12} Generally, a defendant is placed in jeopardy when his guilt or innocence is placed before the trier of fact. *See Serfass v. United States,* 420 U.S. 377, 388, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), *County of Los Alamos v. Tapia,* 109 N.M. 736, 739, 790 P.2d 1017, 1020 (1990); *State v. Mares,* 92 N.M. 687, 690, 594 P.2d 347, 350 (Ct.App. 1979). In a trial to the court without a jury, that moment occurs when the court begins to hear evidence. *See Mares,* 92 N.M. at 690, 594 P.2d at 350. Consequently, Defendant argues that because the metropolitan court heard evidence on the motion to dismiss, jeopardy attached, and the district court trial is prohibited. We do not agree.

{13} Our Supreme Court has discussed in detail the policies underlying the double jeopardy clause when multiple offenses are alleged. *See County of Los Alamos,* 109 N.M. at 741–44, 790 P.2d at 1022–25. According to our Supreme Court, "[i]t is clear from the cases applying the [c]lause that the protection it affords to criminal defendants is not absolute." *Id.* at 742, 790 P.2d at 1023. In *County of Los Alamos,* our Supreme Court described several types of cases in which the issue arises: (1) "where the trial court has entered a judgment of acquittal"; (2) "where the trial is aborted for some reason and the state seeks to place the defendant on trial again"; (3) where "a mistrial is declared but the trial court is found to have abused its discretion in so declaring"; (4) where the trial court was compelled to declare a mistrial, particularly when requested by the defendant; (5) where the trial court aborts the trial in error "ruling favorable to the defendant in the sense that he or she has prevailed, at least for the time being, but no judgment of acquittal has been entered"; and (6) where "the defendant is convicted and his conviction is set aside on appeal on a ground other than insufficiency of the evidence to prove the offense." *Id.* at 742–44, 790 P.2d at 1023–25.

{14} In each of these circumstances, the trial of the defendant has commenced. As the United States Supreme Court stated in *Serfass,* "jeopardy does not attach, and the constitutional prohibition can have no appli-

cation, until a defendant is 'put to trial before the trier of the facts, whether the trier be a jury or a judge.' " 420 U.S. at 388, 95 S.Ct. 1055 (quoting *United States v. Jorn*, 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971)). A defendant is put to trial for double jeopardy purposes when confronted with a determination of his or her guilt. *See Serfass*, 420 U.S. at 389, 95 S.Ct. 1055. The *Serfass* Court explained:

> Under our cases jeopardy had not yet attached when the District Court granted petitioner's motion to dismiss the indictment. Petitioner was not then, nor has he ever been, "put to trial before the trier of facts." The proceedings were initiated by his motion to dismiss the indictment.... At no time during or following the hearing on petitioner's motion to dismiss the indictment did the District Court have jurisdiction to do more than grant or deny that motion, and neither before nor after the ruling did jeopardy attach.

*Serfass*, 420 U.S. at 389, 95 S.Ct. 1055. The *Serfass* Court further explained:

> When a criminal prosecution is terminated prior to trial, an accused is often spared much of the expense, delay, strain, and embarrassment which attend a trial. Although an accused may raise defenses and objections before trial which are "capable of determination without the trial of the general issue," Fed. Rule Crim.Proc. 12(b)(1), and although he must raise certain other defenses or objections before trial, Fed. Rule Crim.Proc. 12(b)(2), in neither case is he "subjected to the hazards of trial and possible conviction." ... Both the history of the Double Jeopardy Clause and its terms demonstrate that it does not come into play until a proceeding begins before a trier "having jurisdiction to try the question of the guilt or innocence of the accused." Without risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.

*Id.* at 391–92, 95 S.Ct. 1055 (citations omitted). This Court adopted a similar application of the Double Jeopardy Clause under the New Mexico State Constitution. *See*

*Mares*, 92 N.M. at 690, 594 P.2d at 350 (quoting *Serfass* with approval).

{15} In the case on appeal, Defendant did not face a conviction when the metropolitan court heard evidence on his motion to dismiss; rather, he only faced the risk that the metropolitan court would deny his motion and order the matter to proceed to trial on findings that he operated a care facility as defined by the statute, and that the victim was a resident of that facility. The court heard the motion more than ten days prior to trial. The motion hearing did not contemplate that the metropolitan court, as trier of fact, hear the evidence on the full merits of the offense. The discrete issue was whether the victim resided in a "care facility" as defined in the Act. The court did not address the question of whether Defendant's acts toward the victim constituted neglect so as to violate the Act. As a result, although the metropolitan court granted Defendant's motion because it did not believe that the Act covered the alleged offense, the court could not have concluded at that stage of the proceeding that Defendant was guilty of the offense.

■ {16} The goals of the multiple-prosecution component of the double jeopardy clause are to protect a defendant from embarrassment, expense, ordeal, anxiety, insecurity, and the right of the defendant to conclusion. *See Green*, 355 U.S. at 187, 78 S.Ct. 221; *County of Los Alamos*, 109 N.M. at 741–42, 790 P.2d at 1022–23. Because Defendant would not face trial until the following month, the only matter for decision at the motion hearing was whether the case would proceed to trial based upon the legal sufficiency of the charge. The goals of double jeopardy protection were not infringed because Defendant, who himself raised the motion, could have no greater expectation of finality. He was not placed in jeopardy by the proceeding. Consequently, because Defendant was not placed in jeopardy at the hearing on his motion to dismiss, he was not placed in jeopardy a second time at his trial de novo in the district court.

### Sufficiency of the Evidence

■ {17} The merits of Defendant's appeal are directed to the sufficiency of the

evidence. Defendant argues, as he did to the metropolitan court, that "people who voluntarily provide aid and care to family, friends, renters or neighbors" do not fall within the prohibition of Section 30–47–5(A). According to Defendant, the district court did not have sufficient evidence to conclude that he had assumed any obligation for the victim's personal care, and, therefore, the State's charge must fail because the victim was not a "resident" as contemplated by the Act. In addition, Defendant contends that it was his mother, not he, who rented the victim the apartment in back of her home and thus, he had not assumed any obligation for the personal care of the victim. We disagree with Defendant's contentions.

{18} The Act proscribes "whoever commits neglect of a resident that results in no harm to the resident is guilty of a petty misdemeanor." Section 30–47–5(A). The legislature specifically defined the terms it used in the Act. It defined "neglect" in terms of grossly negligent behavior as:

(1) failure to provide any treatment, service, care, medication or item that is necessary to maintain the health or safety of a resident; [or]

(2) failure to take any reasonable precaution that is necessary to prevent damage to the health or safety of a resident; or

(3) failure to carry out a duty to supervise properly or control the provision of any treatment, care, good, service or medication necessary to maintain the health or safety of a resident.

Section 30–47–3(F). "Resident" is defined as "any person who resides in a care facility or who receives treatment from a care facility." Section 30–47–3(*l*). "Care facility" includes, among other types of facilities and homes, a "private residence that provides personal care, sheltered care or nursing care for one or more persons." Section 30–47–3(B). We are asked, therefore, to decide whether there was sufficient evidence that Defendant's mother's residence came within the ambit of a "care facility" under the Act. If there was such evidence, as well as sufficient evidence for the district court to determine that the victim resided in the house, that Defendant

owed a duty to the victim, and that Defendant neglected the victim, the district court acted properly upon the evidence.

{19} When analyzing statutory language, we endeavor to give effect to the intent of the legislature. See Cummings v. X–Ray Assocs. of N.M., P.C., 1996–NMSC–035, ¶ 44, 121 N.M. 821, 918 P.2d 1321. To do so, we look first to the statute's plain language. See Key v. Chrysler Motors Corp., 1996–NMSC–038, 121 N.M. 764, 768–69, 918 P.2d 350, 354–55. Yet, caution dictates that we "interpret statutes as a whole and look to other statutes in pari materia in order to determine legislative intent." State v. Martinez, 1998–NMSC–023, ¶ 9, 126 N.M. 39, 966 P.2d 747.

{20} In this vein, Defendant points us to the definition of "caretaker" in the Adult Protective Services Act, NMSA 1978, §§ 27–7–14 to –31 (1989, as amended through 1997), which defines "caretaker" as "an individual or institution that has assumed the responsibility for the care of an adult." Section 27–7–16(D). Defendant distinguishes those who voluntarily provide aid from those who have assumed the responsibility for the care of an adult. We assume as Defendant urges, but do not decide, that to be guilty of Section 30–47–5 one must have a responsibility for care similar to the definition of "caretaker" in Section 27–7–16(D). Nevertheless, when we analyze the sufficiency of the evidence, we conclude there is substantial direct or circumstantial evidence to prove that Defendant's mother's residence is a "care facility" under the Act. See State v. Sutphin, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

{21} Defendant owed a fiduciary obligation as payee of the victim's veteran's benefits to the victim. Defendant stipulated that he was the victim's legal custodian for receipt of veteran's benefits. According to the testimony of the representative from the Department of Veterans Affairs, "[a] legal custodian is appointed to utilize the funds due the veteran to allow the veteran to live in a reasonable capacity for the amount of funds he receives" and "to see that the veteran has a place to live in a reasonable manner, as well as food to eat and clothes to wear." In

other words, the legal custodian receives the veteran's governmental benefits to spend on the veteran's necessities of life. The legal custodian acts as a fiduciary with respect to the veteran. *See* 38 U.S.C. § 5502(a) (1994). As such, Defendant had a duty to receive and disburse the veteran's benefits in the best interest of the victim. *Cf.* NMSA 1978, § 45-5-209 (1995) (duty of guardian of minor); NMSA 1978, § 45-5-417 (1975) (duty of conservator); NMSA 1978, § 45-7-302 (1975) (duty of trustee).

{22} The police officer and social worker both testified that Defendant's mother stated that Defendant was the victim's legal guardian. The social worker also testified that Defendant's mother stated that the victim was kept locked in his apartment to prevent him from going out drinking, and that only Defendant had the key. The social worker further testified that Defendant's mother stated that Defendant and his wife took care of the victim. The assistant district attorney testified to Defendant's statements under oath that he was responsible for the victim's residence, food, medical care, transportation, bathing and laundry.

{23} From the evidence presented at the trial, the district court could reasonably find that: (1) by serving as the victim's legal custodian, Defendant undertook the responsibility to find housing for and to care for the victim; (2) Defendant housed the victim at Defendant's mother's residence and had responsibility for the victim's safety and well-being at the residence; and (3) Defendant, along with others in his family, provided personal services to the victim at Defendant's mother's residence. The district court could therefore properly conclude that Defendant owed the victim a duty and that Defendant's mother's residence, where the victim received personal care from Defendant and other members of his family, was a "care facility" under the Act, and that the victim was a "resident" there. Indeed, contrary to Defendant's position, the fact that he undertook the responsibility to be the victim's legal custodian for his veteran's governmental benefits specifically created the very responsibility for the victim's care that he claims is lacking in the evidence. The evidence was sufficient to indicate that he fulfilled this responsibility by caring for and arranging for the care of the victim at Defendant's mother's residence.

{24} Further, there is substantial evidence that Defendant grossly neglected the victim's personal care. The social worker testified to the thin and malnourished appearance of the victim, and the fact that he smelled of urine, and did not appear to have bathed recently. The building code enforcement officer testified to numerous code violations and overall unsanitary living conditions. There was substantial evidence to support the district court's finding of neglect under the Act.

*Conclusion*

{25} For the foregoing reasons, we conclude that the double jeopardy clause of the New Mexico Constitution does not preclude the State's appeal from the metropolitan court and the Defendant's trial in the district court, and that substantial evidence supports the district court's determination of guilt.

{26} **IT IS SO ORDERED.**

DONNELLY and FLORES, JJ., concur.