2005-NMSC-019

116 P.3d 92

**STATE of New Mexico, Plaintiff–Respondent,**

v.

**Freddie RODRIGUEZ, Defendant–Petitioner.**

**No. 27,409.**

Supreme Court of New Mexico.

June 28, 2005.

John Bigelow, Chief Public Defender, Karl Erich Martell, Assistant Appellate Defender, Santa Fe, NM, for Petitioner.

Patricia A. Madrid, Attorney General, Martha Anne Kelly, Assistant Attorney General, Santa Fe, NM, for Respondent.

## OPINION

SERNA, Justice.

{1} Following a jury trial, Defendant Freddie Rodriguez was convicted of tampering with evidence, in violation of NMSA 1978, § 30–22–5 (1963, prior to 2003 amendment), conspiracy to commit tampering with evidence, in violation of NMSA 1978, § 30–28–2 (1979), theft of a credit card, in violation of NMSA 1978, § 30–16–26 (1971), and contributing to the delinquency of a minor, in violation of NMSA 1978, § 30–6–3 (1990). On appeal to the Court of Appeals, Defendant argued that his convictions violated the constitutional protection against double jeopardy. Specifically, he argued that, following an initial proceeding in municipal court, the present matter involved an impermissible second prosecution for the same offense. The Court of Appeals affirmed by memorandum opinion and relied in part on an exception to double jeopardy adopted by this Court, the jurisdictional exception. We granted Defendant's petition for writ of certiorari to the Court of Appeals to reconsider our continued application of the jurisdictional exception. We limit the application of the jurisdictional exception in New Mexico but affirm Defendant's convictions.

### I. Facts

{2} On May 2, 1999, a sixteen-year-old female, Defendant's girlfriend, stole a purse out of a truck parked at a restaurant. She joined Defendant, and both of them ran away from the truck. Defendant removed a wallet from the purse before discarding it. The wallet contained five one-dollar bills and some credit cards. When the police recov-ered the wallet, which had been hidden in some rocks, the money was missing. The police found Defendant and his girlfriend hiding at his mother's house. Defendant had five one-dollar bills in his possession.

{3} Two days after his arrest, on May 4, 1999, Defendant pleaded no contest in municipal court to charges of accessory (unspecified) and resisting or obstructing an officer. A booking form listed Defendant as having been arrested for the crimes of accessory to larceny and obstructing an officer. The district attorney's office was unaware of the municipal court proceeding and the plea and made no appearance in municipal court.

{4} Approximately one year later, Defendant was indicted for burglary, misdemeanor larceny, tampering with evidence, theft of a credit card, contributing to the delinquency of a minor, and conspiracy to commit burglary or tampering with evidence. Defendant filed a motion to dismiss, arguing that the indictment, as a successive prosecution, violated his right against double jeopardy. Defendant contended that the two prosecutions were based on the same evidence and that the second prosecution was contrary to case law from the United States Supreme Court. The prosecutor responded by arguing that, with the exception of the larceny count, the crimes charged in district court were not the same as those to which Defendant pleaded no contest in municipal court for purposes of a double jeopardy inquiry. The district court judge found that Defendant had pleaded no contest to accessory to larceny in municipal court and indicated that the municipal court did not have jurisdiction over this offense. The judge dismissed the larceny count on double jeopardy grounds but denied the motion to dismiss with respect to the other charges. A jury trial, at which both occupants of the truck and Defendant's girlfriend testified, resulted in the present convictions.

{5} In the Court of Appeals, Defendant again argued that his convictions violated his right against double jeopardy. Defendant argued that the offenses from both prosecutions were the same based on the "same evidence" test set out by this Court in *State v. Tanton*, 88 N.M. 333, 540 P.2d 813 (1975). In rejecting Defendant's argument, the

Court of Appeals noted that it had recently applied the jurisdictional exception in *State v. Darkis,* 2000–NMCA–085, 129 N.M. 547, 10 P.3d 871. As in that case, the Court of Appeals recognized that this Court has "resolutely adhered" to the jurisdictional exception and that the Court of Appeals has no authority to overrule precedent from this Court. *See Darkis,* 2000–NMCA–085, ¶ 10, 129 N.M. 547, 10 P.3d 871. The Court noted that "[t]he crimes for which Defendant was charged in the district court were felonies" and that "none of [these] charges ... could have been heard in the municipal court" because, as a court of limited jurisdiction, it has no power to hear felony charges. As a result, the Court applied the jurisdictional exception. The Court also determined that, even if the *Tanton* "same evidence" test were applicable, the offenses for which Defendant was convicted in district court were not the same as the offenses to which he pleaded no contest in municipal court for purposes of double jeopardy.

## II. Double Jeopardy, Successive Prosecutions, and the Jurisdictional Exception

{6} The United States Constitution and the New Mexico Constitution protect criminal defendants against double jeopardy for the same offense. U.S. Const. amends. V, XIV; N.M. Const. art. II, § 15. The right to be free from double jeopardy "consist[s] of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969) (footnotes omitted), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794, 802–03, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989). The present case involves a second prosecution after conviction. "Where successive prosecutions are at stake, the guarantee serves a constitutional policy of finality for the defendant's benefit. That policy protects the accused from attempts to relitigate the facts underlying a prior acquittal, and from attempts to secure additional punishment af-

ter a prior conviction and sentence." *Brown v. Ohio,* 432 U.S. 161, 165–66, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977) (citations, quotation marks, and quoted authority omitted).

> The underlying idea, one that is deeply ingrained in at least the Anglo–American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him [or her] to embarrassment, expense and ordeal and compelling him [or her] to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he [or she] may be found guilty.

*Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

{7} For purposes of double jeopardy, the phrase "same offense" has a specific meaning. "[T]he test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932), *quoted in Swafford v. State,* 112 N.M. 3, 8, 810 P.2d 1223, 1228 (1991). This test applies in both multiple punishment and multiple prosecution cases. *See United States v. Dixon,* 509 U.S. 688, 696–97, 703–04, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993); *State v. Powers,* 1998–NMCA–133, ¶¶ 21–29, 126 N.M. 114, 967 P.2d 454 (relying on *Dixon* for an independent state constitutional analysis). Under this test, the phrase "same offense" has been interpreted to include greater and lesser included offenses, and thus, the State cannot subject a defendant to a second prosecution for a greater offense when the defendant has been prosecuted for a lesser included offense, whether the first prosecution resulted in conviction or acquittal. *Brown,* 432 U.S. at 169, 97 S.Ct. 2221 ("Whatever the sequence may be, the Fifth Amendment forbids successive prosecution ... for a greater and lesser included offense.").

{8} Even when two offenses are deemed the same under this analysis, however, there are limited exceptions to the prohibition against successive prosecutions. The United

States Supreme Court first recognized the jurisdictional exception in *United States v. Ball,* 163 U.S. 662, 669–70, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). In that case, the Court held that a defective indictment in an initial proceeding does not constitute a permissible basis for a second prosecution if the trial court had jurisdiction over the subject matter and the defendant. *Id.* In contrast, the Court noted that "[a]n acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent indictment and trial in a court which has jurisdiction of the offence." *Id.* at 669, 16 S.Ct. 1192. The Court applied this exception a few years later in *Diaz v. United States,* 223 U.S. 442, 448–49, 32 S.Ct. 250, 56 L.Ed. 500 (1912). The defendant in *Diaz* was initially tried for and found guilty of assault and battery before a justice of the peace. *Id.* at 444, 32 S.Ct. 250. Following his conviction, the victim died from the wounds received in the battery, and the defendant was prosecuted for homicide in a court of general jurisdiction. *Id.* The Court first noted that at the time of the first trial the crime of homicide had not yet been committed and, prior to the death, it was not "possible to put the accused in jeopardy for that offense." *Id.* at 449, 32 S.Ct. 250. Notwithstanding the absence of any jeopardy, however, the Court also relied on the fact that the initial tribunal lacked jurisdiction over the greater offense. "[T]he justice of the peace, although possessed of jurisdiction to try the accused for assault and battery, was without jurisdiction to try him for homicide; and, of course, the jeopardy incident to the trial before the justice did not extend to an offense beyond his jurisdiction." *Id.*

{9} In *State v. Goodson,* 54 N.M. 184, 188, 217 P.2d 262, 264 (1950), we adopted the jurisdictional exception articulated in *Ball* and *Diaz* in the context of prosecutions for greater and lesser included offenses. In a factual scenario somewhat similar to the one in *Diaz,* we applied the exception to permit a second prosecution for rape in the district court following an initial guilty plea and sentence for assault and battery before a justice of the peace. *Id.* at 185, 188, 217 P.2d at 263–65. We explained that

[r]eason and logic do not support a rule whereby one guilty of the crime of rape may escape a possible sentence of 99 years in the penitentiary by the expedient of pleading guilty to a charge of assault and battery in a justice court where the penalty may be as low as a fine of $5.00.

*Id.* at 188, 217 P.2d at 265. The jurisdictional exception was later applied in a number of New Mexico cases. *E.g., Trujillo v. State,* 79 N.M. 618, 619, 447 P.2d 279, 280 (1968); *State v. Paris,* 76 N.M. 291, 298, 414 P.2d 512, 517 (1966); *State v. Mabrey,* 88 N.M. 227, 228–29, 539 P.2d 617, 618–19 (Ct.App. 1975).

{10} Defendant argues that *Goodson,* as well as the jurisdictional portion of *Diaz,* is inconsistent with more recent Supreme Court authority. Specifically, Defendant contends that *Diaz* was implicitly overruled by *Waller v. Florida,* 397 U.S. 387, 90 S.Ct. 1184, 25 L.Ed.2d 435 (1970). In *Waller,* the Supreme Court reviewed a successive prosecution case from Florida, in which an initial conviction was obtained in municipal court followed by a subsequent conviction in state court. *Id.* at 388–89, 90 S.Ct. 1184. The Court noted that a substantial number of jurisdictions "treat[ed] municipalities and the State as separate sovereign entities, each capable of imposing punishment for the same alleged crime," *id.* at 391, 90 S.Ct. 1184, and the Court confined itself to the limited question of "the asserted power of the two courts within one State to place petitioner on trial for the same alleged crime." *Id.* at 390, 90 S.Ct. 1184. In other words, the sole issue before the Supreme Court was whether municipal courts and state courts represent separate sovereigns for purposes of applying the dual sovereignty exception to double jeopardy. In answer to this narrow question, the Court held that dual sovereignty did not apply because political subdivisions such as municipalities are subordinate instrumentalities acting under the sovereignty of the state rather than independent sovereigns. *Id.* at 392–95, 90 S.Ct. 1184.

{11} We have, on three previous occasions, rejected the argument that *Waller* implicitly abolished the jurisdictional exception or over-

ruled *Diaz*. *State v. Padilla,* 101 N.M. 58, 59, 678 P.2d 686, 687 (1984), *aff'd by an equally divided Court sub nom. Fugate v. New Mexico,* 470 U.S. 904, 105 S.Ct. 1858, 84 L.Ed.2d 777 (1985);[1] *State v. Manzanares,* 100 N.M. 621, 623, 674 P.2d 511, 513 (1983); *State v. James,* 93 N.M. 605, 607, 603 P.2d 715, 717 (1979).

> The fatal flaw in this argument is that the facts in [*Waller* ] would not support a claim of the jurisdictional exception and therefore the issue was not addressed by the United States Supreme Court. There was not a claim in … *Waller* … that the court hearing the lesser charge did not have jurisdiction to hear the greater charge as well.

*Manzanares,* 100 N.M. at 623, 674 P.2d at 513. We concluded that *Waller* was limited to the principle of dual sovereignty and did not undermine New Mexico precedent adopting the jurisdictional exception. *Id.* We further reiterated the reason for the rule:

> The problem with tests that do not recognize the jurisdictional exception is that they allow defendants to abuse the multilevel judicial system which exists in New Mexico and in other jurisdictions. Without the exception, a defendant can plead guilty to all misdemeanor charges arising from a criminal act in magistrate court and never be in jeopardy of a felony prosecution involving similar evidence in the district court.... [R]eason and logic do not support a rule where one guilty of a crime of homicide by vehicle may escape a possible sentence of three years imprisonment by the expedient of pleading guilty to a charge of DWI or reckless driving where the penalty may be as low as a $25.00 fine and five days in jail.

*Id.* at 624, 674 P.2d at 514.

{12} In deference to stare decisis, we would not normally revisit our interpretation of *Waller* without a compelling reason. Defendant contends, however, that *Padilla, Manzanares,* and *James* are weakened by *Salaz v. Tansy,* 730 F.Supp. 369, 370–73

(D.N.M.1989), in which the federal court, on habeas review, overturned a New Mexico conviction due to a violation of double jeopardy. In *Salaz,* the court opined that this Court's interpretation of *Waller* in *Manzanares* "was too narrow" and that *Waller* implicitly overruled the jurisdictional exception. 730 F.Supp. at 371–72. We do not view this authority as controlling or persuasive for two reasons. First, having been based on a simple disagreement with our interpretation of *Waller,* we are not convinced that a federal court would reach a similar conclusion as *Salaz* under current federal habeas law. *See Williams v. Taylor,* 529 U.S. 362, 402–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (discussing the change in law due to a statutory amendment in 1996 that requires a state court's interpretation of constitutional law to be in direct conflict with a Supreme Court decision or an objectively unreasonable application of Supreme Court precedent and stating that, without a finding of unreasonableness, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly").

{13} Second, we note that *Diaz* involved two prosecutions by a territorial government, 223 U.S. at 444, 32 S.Ct. 250, and it was well established at that time that the territory's "judicial tribunals exert all their powers by authority of the United States." *Grafton v. United States,* 206 U.S. 333, 354, 27 S.Ct. 749, 51 L.Ed. 1084 (1907). In other words, the Supreme Court applied the jurisdictional exception in *Diaz* despite two prosecutions by a single sovereign, the United States. Because only a single sovereign was at issue in *Diaz,* its holding was not based on the dual sovereignty exception to double jeopardy. Thus, we do not believe that *Waller,* which solely addressed the question of dual sovereignty, can be viewed as inconsistent with *Diaz* or as overruling that authority by implication. *See Robinson v. Neil,* 366 F.Supp. 924, 928 (E.D.Tenn.1973). *Waller* stands for

---

1. While an affirmance by an equally divided Court does not stand as Supreme Court precedent for future cases, it does serve to uphold a lower court's judgment. *See Hertz v. Woodman,*

218 U.S. 205, 213–14, 30 S.Ct. 621, 54 L.Ed. 1001 (1910). As a result, *Padilla* is valid New Mexico precedent.

the proposition that municipal courts and state courts are the same sovereign for purposes of double jeopardy, but it does not answer the question whether a second prosecution may be brought in state court on a charge that was beyond the municipal court's jurisdiction. *Diaz* directly addressed the latter point in the context of a first prosecution in a court of limited jurisdiction and a second prosecution in a court of general jurisdiction of the same sovereign; the Court answered the question by allowing the second prosecution. The Supreme Court has specifically directed that "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the [lower courts] should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989). Because the Supreme Court has not overruled *Diaz*, it remains valid authority on the jurisdictional exception. Moreover, we note that *Salaz* failed to recognize the continued viability of the original form of the jurisdictional exception recognized in *Ball*. There is no question that, irrespective of the lesser included offense principle of *Diaz*, a void judgment does not constitute a former jeopardy. *See Ball*, 163 U.S. at 669, 16 S.Ct. 1192; *see also Grafton*, 206 U.S. at 345, 27 S.Ct. 749 ("[B]efore a person can be said to have been put in jeopardy of life or limb the court in which he [or she] was acquitted or convicted must have had jurisdiction to try him [or her] for the offense charged."). For these reasons, we remain unconvinced that *Waller* has any bearing on the jurisdictional exception.

{14} Nonetheless, following our own review of additional Supreme Court authority, we believe that the jurisdictional exception in New Mexico is overly broad. In *Grafton*, the defendant, a member of the military, was tried for and acquitted of homicide before a general court-martial in relation to two killings in the Philippine Islands. 206 U.S. at 341–42, 27 S.Ct. 749. He was then tried before a Philippine court for the crime of assassination as defined in the Philippines Penal Code, where he was convicted of the

lesser included offense of homicide. *Id.* at 342–44, 27 S.Ct. 749. The defendant argued that his conviction was the product of an impermissible successive prosecution in violation of double jeopardy. *Id.* at 344, 27 S.Ct. 749. The trial court rejected the defendant's claim because the military court did not have jurisdiction over capital crimes and the charged offense in the second prosecution, assassination, was defined as a capital offense. *Id.* However, the Supreme Court disagreed.

> If tried by the military court for homicide as defined in the Penal Code, and acquitted on that charge, the guaranty of exemption from being twice put in jeopardy of punishment for the same offense would be of no value to the accused, if on a trial for assassination, arising out of the same acts, he could be again punished for the identical offense of which he had been previously acquitted.

*Id.* at 350, 27 S.Ct. 749. "[I]f not guilty of homicide . . .—and such was the finding of the court-martial—he could not, for the same acts and under the same evidence, be guilty of assassination. . . ." *Id.* at 349, 27 S.Ct. 749. Thus, it would appear from *Grafton* that it is impermissible to subject a defendant to a successive prosecution for a greater offense, together with lesser included offenses, following an acquittal on a lesser included offense, even if the court hearing the initial proceeding lacks jurisdiction over the greater offense. *See id.* at 352, 27 S.Ct. 749.

■ {15} At first glance, *Grafton* appears to be at odds with *Diaz*. However, *Diaz* was decided only five years after *Grafton*, and yet the Court failed to even mention *Grafton* in *Diaz* despite the fact that both cases involved double jeopardy challenges, and jurisdictional issues, arising out of prosecutions in the Philippine Islands. Under these circumstances, we find it unlikely that the Court in *Diaz* would have either overlooked *Grafton* or overruled it *sub silentio*. We think it is much more likely that the Supreme Court believed that these two cases were distinguishable. *Grafton* differs from *Diaz* in two important respects. First, *Grafton* involved an acquittal during the first trial. As a result, the double jeopardy challenge in that

case invoked the principle of collateral estoppel. "[W]hen an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Ashe v. Swenson*, 397 U.S. 436, 443, 445, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) (holding that the principle of collateral estoppel is protected by the constitutional right against double jeopardy). The Supreme Court itself even noted recently that, "[i]n fact, *Grafton* may simply have been decided on grounds of collateral estoppel." *Dixon*, 509 U.S. at 709 n. 13, 113 S.Ct. 2849.

{16} In addition to this significant distinction from *Diaz*, *Grafton*, while involving a second *prosecution* for a greater offense over which the initial court had no jurisdiction, dealt with a *conviction* from that second prosecution of the same lesser included offense for which the defendant had been tried initially and over which the initial court had jurisdiction. *See Grafton*, 206 U.S. at 349, 27 S.Ct. 749 ("That [the defendant] will be punished for the identical offense of which he has been acquitted, if the judgment of the civil court, now before us, be affirmed, is beyond question ...."); *id.* at 355, 27 S.Ct. 749 ("[H]aving been acquitted of the crime of homicide, alleged to have been committed by him in the Philippines, by a military court of competent jurisdiction, proceeding under the authority of the United States, [the defendant] could not be subsequently tried *for the same offense* in a civil court exercising authority in that Territory.") (emphasis added). In other words, *Grafton* involved two judgments on the same crime, homicide, from two courts having jurisdiction over that offense. The importance of this distinction is revealed in the Court's language in *Diaz:* "All that could be claimed for [the prior] jeopardy was

that it protected the accused from being again prosecuted for the assault and battery, and therefore required that the latter be not treated as included, as a lesser offense, in the charge of homicide, as otherwise might have been done ...." *Diaz*, 223 U.S. at 449, 32 S.Ct. 250.

{17} Reading *Diaz* and *Grafton* together, then, *Grafton* can be viewed as placing two important limitations on the jurisdictional exception. First, the exception cannot be used to permit a successive prosecution for a greater offense following an acquittal of a lesser included offense. Second, the successive prosecution cannot include a lesser offense for which the defendant has been convicted.[2] Additionally, we do not believe that the Supreme Court intended to apply the jurisdictional exception in cases that implicate the core concerns of the Double Jeopardy Clause of protecting finality, preventing governmental overreaching, and reducing the risk of erroneous conviction through rehearsed prosecution. Just as the jurisdictional exception prevents defendants from using the protection of double jeopardy to abuse the multi-tiered judicial system in New Mexico, we limit the jurisdictional exception in a manner that will prevent prosecutors from similarly exploiting our judicial structure to defeat a defendant's double jeopardy rights. Thus, particularly where there have been two trials rather than a guilty plea followed by a trial, the jurisdictional exception will not permit a second prosecution on a greater charge when the State has deliberately sought a separate prosecution on a lesser included charge in a court of limited jurisdiction. Otherwise, the exception would countenance the type of rehearsal of proof, and the accompanying risk of erroneous con-

2. Although the State or the trial court, on its own motion, would be precluded from placing the lesser included offense in issue, the defendant would be entitled to request a lesser included offense instruction as part of a defense strategy. *See Darkis*, 2000–NMCA–085, ¶ 20, 129 N.M. 547, 10 P.3d 871. In such a case, there would be no governmental action with respect to the jury's consideration of the lesser included offense, *cf. Jeffers v. United States*, 432 U.S. 137, 152–54, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (discussing double jeopardy in the context of a defendant's choice to proceed with separate tri-

als on greater and lesser included offenses), and the defendant would not be placed in jeopardy on the lesser included offense a second time because a guilty verdict on that offense would be void and accepted by the trial court as an acquittal on the only charge at issue, the greater offense. *See Darkis*, 2000–NMCA–085, ¶ 21, 129 N.M. 547, 10 P.3d 871. This rule is designed to protect the principle that "[a] defendant is entitled to an instruction on a theory of the case where the evidence supports the theory." *State v. Salazar*, 1997–NMSC–044, ¶ 50, 123 N.M. 778, 945 P.2d 996.

viction, that is one of the chief evils double jeopardy seeks to prevent.

{18} The facts in *Salaz* help illustrate this point. In that case, the defendant was convicted of the misdemeanor of resisting, evading or obstructing a police officer in magistrate court and of the felony of battery upon a peace officer in district court. 730 F.Supp. at 372. The federal court in *Salaz* focused on the fact that "[t]he prosecutor *chose* to prosecute the petitioner in separate actions on offenses which arose out of the same alleged criminal act." *Id.* at 373 (emphasis added). We agree with the *Salaz* court that a prosecutorial choice of this type "clearly do[es] not present the type of problems [of abuse of the multi-level judicial system by defendants] which have concerned the New Mexico courts." *Id.* at 372–73. Thus, while we disagree with the conclusion in *Salaz* that the United States Supreme Court has abolished the jurisdictional exception, we agree that the jurisdictional exception might not have been applicable under the factual circumstances of that case.

■ {19} However, our assessment of *Salaz* is obscured by the fact that the two charges "were filed on the same date *in the same court* by the same prosecutor." 730 F.Supp. at 373 (emphasis added). The "same court" is presumably a reference to the magistrate court. These facts suggest that the charges in *Salaz* may have been filed in the same criminal complaint, with the defendant pleading guilty to the lesser charge and the magistrate court binding the defendant over for trial on the greater charge. *See* Rule 6–202(C) NMRA 2005 (governing preliminary examinations); Rule 6–501(B) NMRA 2005 (discussing arraignment and pleas to offenses within the magistrate court's jurisdiction). If that were the case, then under clearly established Supreme Court precedent the proceeding in district court would be considered a continuation of the magistrate court proceeding, and the defendant's guilty plea on the lesser included offense would not preclude further prosecution for the greater offense. *See Ohio v. Johnson*, 467 U.S. 493, 501, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984) ("Respondent's argument is apparently based on the assumption that trial proceedings, like amoebae, are capable of being infinitely subdivided, so that a determination of guilt and punishment on one count of a multicount indictment immediately raises a double jeopardy bar to continued prosecution on any remaining counts that are greater or lesser included offenses of the charge just concluded. We have never held that, and decline to hold it now."). In such a case, the Double Jeopardy Clause would function only to prevent multiple punishments following conviction of the greater offense. *See id.* at 501–02, 104 S.Ct. 2536. Where there "has been none of the governmental overreaching that double jeopardy is supposed to prevent" and "ending the prosecution ... would deny the State its right to one full and fair opportunity to convict those who have violated its laws," defendants are not "entitled to use the Double Jeopardy Clause as a sword to prevent the State from completing its prosecution on the remaining charges." *Id.* at 502, 104 S.Ct. 2536. Thus, in determining whether to restrict the jurisdictional exception under particular facts, it will be necessary to assess whether there has been prosecutorial overreaching or, instead, whether the defendant has attempted to use double jeopardy as a sword.

{20} We limit the jurisdictional exception in New Mexico according to the principles discussed above. Beyond these limitations, however, we conclude that *Ball* and *Diaz* remain good law and that the jurisdictional exception remains valid in New Mexico in this more limited form. We assess the facts of Defendant's case in light of our more narrow interpretation of the jurisdictional exception.

## III. Application of Double Jeopardy

■ {21} Defendant pleaded no contest in municipal court to larceny and obstructing an officer, and he was convicted in district court of tampering with evidence, conspiracy to commit tampering with evidence, contributing to the delinquency of a minor, and theft of a credit card. Our first task in reviewing Defendant's double jeopardy claim is to determine whether the two prosecutions involved the same offense. In resolving this

issue, we apply the *Blockburger* same elements test.

{22} Defendant contends that we should instead rely on the "same evidence" test that we articulated in *Tanton* and *Owens v. Abram,* 58 N.M. 682, 274 P.2d 630 (1954). However, Defendant misconstrues these cases as providing a broader definition of "same offense" than *Blockburger.* On the contrary, not unlike the *Blockburger* test of "whether each provision requires proof of a fact which the other does not," *Blockburger,* 284 U.S. at 304, 52 S.Ct. 180, we have described the "same evidence" test as "whether the facts offered in support of one [offense] would sustain a conviction of the other." *Owens,* 58 N.M. at 684, 274 P.2d at 631. Prior to *Owens,* we had adopted the *Blockburger* test in New Mexico, *State v. Blevins,* 40 N.M. 367, 369, 60 P.2d 208, 210 (1936), and other courts, including the United States Supreme Court, have at times mislabeled the *Blockburger* test as a "same evidence" test. *E.g., Sanabria v. United States,* 437 U.S. 54, 70 n. 24, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *Jeffers v. United States,* 432 U.S. 137, 144, 147, 97 S.Ct. 2207, 53 L.Ed.2d 168 (1977) (plurality opinion); *Salaz,* 730 F.Supp. at 370.

{23} To the extent that *Owens* could be said to have diverged from *Blockburger,* it would actually represent a more restrictive definition of double jeopardy than *Blockburger.* In addition to the language quoted above that we believe is similar to *Blockburger,* we also stated in *Owens* that "[i]f *either* information requires the proof of facts to support a conviction which the other does not, the offenses are not the same and a plea of double jeopardy is unavailing." *Owens,* 58 N.M. at 684, 274 P.2d at 631 (emphasis added). By assessing whether *either* crime requires proof of additional facts, unlike *Blockburger's* evaluation of whether *both* crimes require proof of a fact not required by the other, this test would be contrary to the Supreme Court's holding in *Brown,* 432 U.S. at 169, 97 S.Ct. 2221, because it would not treat greater and lesser included offenses as the same offense; the greater offense would require proof of additional facts to support a conviction. Based on the Supremacy Clause,

we would be bound to overrule the "same evidence" test under this interpretation. Instead, we view *Owens* and *Tanton* as intending to apply the *Blockburger* same elements test. Although we have noted that *Owens* was ambiguous as to whether the inquiry should focus on the facts adduced at trial or on the statutory elements of a crime, *Swafford,* 112 N.M. at 10, 810 P.2d at 1230, the Supreme Court has explained since we decided *Owens* that "the *Blockburger* test focuses on the proof necessary to prove the statutory elements of each offense, rather than on the actual evidence to be presented at trial." *Illinois v. Vitale,* 447 U.S. 410, 416, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). We clarify that the *Blockburger* test applies in New Mexico in assessing both multiple punishment and successive prosecution claims. *See Swafford,* 112 N.M. at 14, 810 P.2d at 1234; *Powers,* 1998–NMCA–133, ¶ 29, 126 N.M. 114, 967 P.2d 454.

{24} As the Court of Appeals determined, it is clear from the different elements required that the offenses of tampering with evidence, conspiracy to commit tampering with evidence, and contributing to the delinquency of a minor are not the same offense as larceny or obstructing an officer under the *Blockburger* test. The Double Jeopardy Clause was not implicated by the prosecution for these offenses in a separate proceeding in district court.

{25} The offense of theft of a credit card, however, is not as clear. This offense is defined as

> tak[ing] a credit card from the person, possession, custody or control of another without the cardholder's consent, or . . . with knowledge that it has been so taken, acquir[ing] or possess[ing] a credit card with the intent to use it or to sell it, or to transfer it to a person other than the issuer or the cardholder.

Section 30–16–26. The Legislature has provided that "[t]aking a credit card without consent includes obtaining it by conduct defined or known as *statutory larceny,* common-law larceny by trespassory taking, common-law larceny by trick, embezzlement or obtaining property by false pretense, false promise or extortion." *Id.* (emphasis added).

Thus, under the alternative of the crime relevant to this case, the offense of theft of a credit card completely subsumes the offense of larceny. *See* NMSA 1978, § 30–16–1 (1987) ("Larceny consists of the stealing of anything of value which belongs to another."). *See generally State v. Franco,* 2005–NMSC–013, ¶ 14, 137 N.M. 447, 112 P.3d 1104 ("[W]e treat statutes written in the alternative as separate statutes for purposes of the *Blockburger* analysis."). Larceny is thus a lesser included offense of theft of a credit card.[3] Nevertheless, we do not believe that the municipal court prosecution for larceny involved the same offense as the district court prosecution for theft of a credit card.

{26} The municipal court is not a court of record, so there is no express indication in the record of the factual basis for the larceny conviction. However, the municipal court's jurisdiction is, for the most part, limited to "all offenses and complaints under ordinances of the municipality." NMSA 1978, § 35–14–2(A) (1988). The Legislature has authorized municipalities to adopt ordinances "not inconsistent with the laws of New Mexico" and permitted the enforcement of ordinances "by prosecution in the municipal court," NMSA 1978, § 3–17–1 (1994), but the Legislature limited punishment for most offenses to "a fine of not more than five hundred dollars ($500) or imprisonment for not more than ninety days or both." Section 3–17–1(C)(1); *accord* NMSA 1978, § 35–15–3(C) (1987, prior to 2001 amendment) ("The imprisonment shall not exceed ninety days for any one offense...."). Because the municipal court has no jurisdiction over felonies, such as the felony of theft of a credit card, and because municipal ordinances cannot be inconsistent with state law, we conclude that Defendant's conviction of larceny in the municipal court must have been based on the theft of the purse and cash rather than on the theft of the credit card.

{27} As indicated by the separate treatment of the crimes in Section 30–16–26 and Section 30–16–1, the Legislature intended to distinguish larceny of a credit card from larceny of generic property, such as the purse and cash, and to punish each independently. *Cf. State v. Alvarez–Lopez,* 2004–NMSC–030, ¶¶ 37–44, 136 N.M. 309, 98 P.3d 699 (discussing a unit of prosecution claim based on separate larceny convictions for general property and firearms), *cert. denied,* 543 U.S. 1177, 125 S.Ct. 1334, 161 L.Ed.2d 162 (2005). For example, had the municipal court proceeding not occurred, Defendant could have been convicted in district court of both larceny, for stealing the purse and cash, and theft of a credit card without offending the multiple punishment prong of double jeopardy. Thus, Defendant's municipal court conviction of larceny is not the same offense for purposes of double jeopardy as the district court conviction of theft of a credit card. The district court's dismissal of the larceny charge for the theft of the purse and cash ensured that Defendant was not prosecuted twice for the same offense.[4]

█ {28} In any event, even if the municipal court prosecution had been based on the credit card, we would apply the jurisdictional exception. As we have noted, the municipal court had no jurisdiction to hear the felony charge of theft of a credit card. The limited jurisdiction of the municipal court is analogous to the limited jurisdiction of the justices of the peace in *Diaz* and *Goodson.* In addition, unlike in *Grafton,* Defendant was not acquitted of the charge of larceny. Further, there is no indication of any prosecutorial overreaching. Unlike *Salaz,* the district attorney's office that later prosecuted Defendant in district court was unaware of and had no involvement in the municipal court proceeding. In fact, a district attorney is "the law officer of the state and of the counties within his [or her] district," N.M. Const. art.

---

3. The Court of Appeals held that theft of a credit card is distinct from larceny because the former requires an intent to use, sell, or transfer the card. However, this element is only necessary for the alternative of acquiring or possessing a credit card; it is not necessary for the alternative of taking a credit card from another without the cardholder's consent. Section 30–16–26.

4. Because the State did not appeal the district court's dismissal of the larceny charge, it is unnecessary for us to address the district court's statement that the municipal court lacked jurisdiction over the offense of larceny.

VI, § 24, and is authorized to prosecute actions "in which the state or any county in his [or her] district may be a party or may be interested" in district court, NMSA 1978, § 36–1–18(A) (2001), or in magistrate court, NMSA 1978, § 36–1–20 (1909). However, in municipal court, it is contemplated that the city attorney, a municipal officer, a police officer, or a private citizen will prosecute the violation of a municipal ordinance. Rule 8–111 NMRA 2005. As we did in *Manzanares*, we encourage cooperation between prosecutors to avoid unnecessary successive prosecutions, 100 N.M. at 624, 674 P.2d at 514; however, we recognize that the divided authority between state and municipal level prosecutors, particularly given the substantial involvement of police officers in municipal prosecutions and the likelihood of a plea to an officer's citation or complaint prior to any opportunity for prosecutorial review, will at times impede or even prevent such cooperation. As we stated in *Manzanares* and *James*, we do not believe that the logistical difficulties inherent in our multi-tiered judiciary should allow defendants to evade felony charges by pleading to minor charges in municipal court immediately following arrest. *See Manzanares*, 100 N.M. at 624, 674 P.2d at 514; *James*, 93 N.M. at 606, 603 P.2d at 716. Defendant's plea in municipal court only two days after his arrest ensured that the State did not have "the opportunity to marshal its evidence and resources more than once or to hone its presentation of its case through a trial." *Johnson*, 467 U.S. at 501, 104 S.Ct. 2536. In short, the second prosecution did not implicate any of the core concerns of double jeopardy. As a result, the jurisdictional exception precludes Defendant from using double jeopardy as a sword to prevent a full and fair opportunity to convict him of the crimes he committed.

## IV. Conclusion

{29} We limit the application of the jurisdictional exception in New Mexico. The exception cannot be applied in the event of an acquittal of a lesser included offense. In addition, the prosecution of a greater offense over which an initial court lacked jurisdiction cannot include a lesser included offense for which the defendant was convicted. Finally, the exception will not apply in cases in which a successive prosecution violates the core concerns of the Double Jeopardy Clause. Despite our limitation of the jurisdictional exception, we affirm Defendant's convictions because he was not prosecuted twice for the same offense.

{30} **IT IS SO ORDERED.**

WE CONCUR: RICHARD C. BOSSON, Chief Justice, PETRA JIMENEZ MAES, Justice.

PAMELA B. MINZNER, Justice (specially concurring).

EDWARD L. CHÁVEZ, Justice (specially concurring).

CHÁVEZ, Justice (specially concurring).

{31} I concur with the result reached by the majority opinion. The thorough discussion of *Blockburger* persuades me that the Double Jeopardy Clause is not implicated for any of the charges brought in district court. Accordingly, I too would affirm Defendant's convictions.

{32} I write separately to express my views on the jurisdictional exception to double jeopardy. Although it was unnecessary given our conclusion that double jeopardy is not implicated, the exception was thoroughly discussed by the majority, and because we granted certiorari to consider "our continued application of the jurisdictional exception," I feel compelled to comment. In my view, the only time the exception could arise under the majority's approach is when a defendant has either been acquitted or convicted in a court of limited jurisdiction and the State later seeks to prosecute the defendant in a court of general jurisdiction on a greater offense arising from the same transaction or occurrence. In attempting to limit application of the jurisdictional exception, the majority distinguishes between the case in which a defendant pleads guilty in a court of limited jurisdiction and that in which the defendant is actually tried of the lesser offense in the court of limited jurisdiction. Where the defendant pleads guilty to the lesser offense, the majority would apply the jurisdictional exception to permit a prosecution of the

greater offense in a court of general jurisdiction. If the defendant is convicted in the court of general jurisdiction of the lesser included offense to which he pled guilty in the court of limited jurisdiction, the majority would cure the double jeopardy problem by voiding the conviction. Opinion, ¶ 16. I disagree with both the distinction drawn by the majority and its cure for the following reasons.

{33} While I appreciate that the majority limits the application of the jurisdictional exception to cases in which a defendant pleads guilty to the lesser offense in a court of limited jurisdiction, as opposed to actually being tried and found guilty, I find the distinction to be without a meaningful difference. A plea of guilty constitutes a conviction, *French v. Cox*, 74 N.M. 593, 596, 396 P.2d 423, 425 (1964), and upon sentencing in a court of general jurisdiction, a guilty plea bars subsequent prosecution for a greater offense arising from the same act. *State v. Angel*, 2002–NMSC–025, ¶ 13, 132 N.M. 501, 51 P.3d 1155. In my view, when the State has the necessary facts to charge a defendant with all crimes arising from the event at issue, a defendant's plea of guilty to a lesser included offense in a court of limited jurisdiction bars a prosecution of the greater offense, even if in a court of general jurisdiction. *See State v. Medina*, 87 N.M. 394, 396, 534 P.2d 486, 488 (Ct.App.1975) (when a defendant pleads guilty to a lesser included offense in a court of general jurisdiction, the defendant may not be tried subsequently for the greater offense).

{34} Continuing to apply the jurisdictional exception simply because a defendant has pled guilty necessarily encourages defendants not to enter guilty pleas in courts of limited jurisdiction. While there may be defendants who "abuse the multi-tiered judicial system," it is at least equally plausible that defendants will plead guilty soon after charges are filed in a court of limited jurisdiction to bring closure to the matter by accepting responsibility for their wrongdoing, avoiding unnecessary expense, and getting

on with their lives. A well-stated purpose of the double jeopardy clause is to prevent the government from repeatedly subjecting citizens to the expense, embarrassment, and ordeal of repeated trials. *State v. Davis*, 1998–NMCA–148, ¶ 16, 126 N.M. 297, 968 P.2d 808. This purpose is frustrated by application of the jurisdictional exception when a defendant pleads guilty to a lesser offense in a court of limited jurisdiction.

{35} My disagreement with the majority's proposed cure, voiding the subsequent conviction of the same crime to which the defendant pled guilty and for which he was sentenced in the court of limited jurisdiction, is that such an approach is contrary to Article II, Section 15 of the New Mexico Constitution, which provides, "nor shall any person be twice put in jeopardy for the same offense." [1] Double jeopardy attaches well before a defendant has been tried and convicted. *See State v. Nunez*, 2000–NMSC–013, ¶ 28, 129 N.M. 63, 2 P.3d 264 (internal footnote omitted) ("In a nonjury trial, jeopardy attaches when the court begins to hear at least some evidence on behalf of the state. In a jury trial, jeopardy attaches at the point when a jury is impaneled and sworn to try the case."); *cf. Angel*, 2002–NMSC–025, ¶ 10, 132 N.M. 501, 51 P.3d 1155 (where a defendant enters a guilty plea, jeopardy attaches upon entry of judgment and sentencing). A conviction of a lesser offense necessarily included in a greater offense bars a subsequent *prosecution* for the greater offense. *Medina*, 87 N.M. at 396, 534 P.2d at 488.

{36} For the foregoing reasons, I concur in the result but would abolish the jurisdictional exception.

I CONCUR: PAMELA B. MINZNER, Justice.

---

1. The language I rely on from Article II, Section 15 is similar to the language in the Fifth Amendment to the United States Constitution which provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb."