******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* BRIAN WRIGHT
(SC 19189)

Rogers, C. J., and Palmer, Zarella, Eveleigh, McDonald, Espinosa and
Robinson, Js.

*Argued September 14—officially released December 1, 2015*

*Glenn W. Falk*, assigned counsel, for the appellant (defendant).

*Melissa L. Streeto*, senior assistant state's attorney, with whom, on the brief, were *Gail Hardy*, state's attorney, and *Anne Mahoney*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ESPINOSA, J. The defendant, Brian Wright, appeals from the judgment of conviction, rendered following a jury trial, of two counts of aggravated sexual assault of a minor in violation of General Statutes § 53a-70c (a) (1) and (6),[1] and one count each of risk of injury to a child in violation of General Statutes § 53-21 (a) (2), attempt to commit sexual assault in the first degree in violation of General Statutes §§ 53a-49 and 53a-70 (a) (2), and unlawful restraint in the first degree in violation of General Statutes § 53a-95. The defendant seeks review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), of his claim that his convictions and sentences for two counts of aggravated sexual assault of a minor in violation of § 53a-70c (a) (1) and (6) violate the prohibition against double jeopardy because they constitute multiple punishments for the same offense. The defendant contends that, notwithstanding the fact that subdivisions (1) and (6) of § 53a-70c (a) each require proof of a fact that the other does not, the two subdivisions do not delineate separately punishable offenses, but alternative methods by which the state may seek an enhanced sentence for the commission of the predicate offenses listed in § 53a-70c (a). The state responds that because the two subdivisions are separately punishable offenses pursuant to the test set forth in *Blockburger* v. *United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932), there is a rebuttable presumption that multiple punishments pursuant to § 53a-70c (a) (1) and (6) do not run afoul of the double jeopardy clause. Because there is no clear contrary legislative intent either on the face of the statute or in its legislative history, the state contends, the defendant has failed to rebut that presumption and there is no double jeopardy violation. We agree with the state and affirm the judgment of conviction.

The jury reasonably could have found the following relevant facts. On July 20, 2010, the victim, S, who was ten years old at the time, was walking from his home to the swimming pool at Pope Park in Hartford, where he had been attending daily swim team practice that summer. While S was on his way across the park to go to the pool, he encountered the defendant, who stopped him and asked him if he wanted to make some money. When S responded "yes," the defendant told S to come with him. The two walked up a hill, into a wooded area of the park, where they were alone. The defendant asked S if he was nervous and S responded, "yeah." S then asked the defendant what type of job the defendant had for him. "It's a surprise," responded the defendant. The defendant then asked S for a hug, upon which S took one step closer to the defendant, who immediately enveloped S in a "bear hug" and simultaneously squeezed his buttocks. S became afraid and pushed the defendant away, spun around so that his back was to

the defendant and started to run. When the defendant tried to stop S by grabbing his backpack, S let go of the pack, then kicked the defendant and continued running. The defendant tried to trip him by kicking the side of his leg, but S escaped, running out of the park and across the street to where he saw a man standing on the sidewalk in front of a retail store. When S told him what had happened, the man allowed S to use his cell phone to call the police.

The defendant was subsequently arrested and, following a jury trial, was convicted of both counts of aggravated sexual assault of a minor in violation of § 53a-70c (a) (1) and (6), and one count each of risk of injury to a child in violation of § 53-21 (a) (2), attempt to commit sexual assault in the first degree in violation of §§ 53a-49 and 53a-70 (a) (2), and unlawful restraint in the first degree in violation of § 53a-95. The court subsequently sentenced the defendant to a total effective sentence of 120 years of incarceration, fifty-five years of which are mandatory. Specifically, as to count two for aggravated sexual assault in the first degree in violation of § 53a-70c (a) (6), the defendant was sentenced to fifty years of incarceration, twenty-five years of which are mandatory.[2] This appeal followed.

The parties agree that pursuant to the test set forth in *Blockburger* v. *United States*, supra, 284 U.S. 304, subdivisions (1) and (6) of § 53a-70c (a) set forth two separately punishable offenses. Therefore, the sole issue in the present case is whether there is clear evidence of a contrary legislative intent that rebuts the presumption under *Blockburger* that the two subdivisions set forth separately punishable offenses for purposes of the double jeopardy clause. The defendant argues that the statutory language and legislative history of § 53a-70c rebut the presumption, by providing clear evidence that the legislature intended in § 53a-70c (a) merely to set forth aggravating factors that increased the applicable mandatory minimum sentence for violating one of the predicate offenses listed in the statute. The state responds that neither the statutory language nor its legislative history provide the clear evidence of legislative intent that is necessary to rebut the *Blockburger* presumption. We agree with the state.

Because the defendant concedes that he did not raise this claim at trial, we review his claim pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. Under *Golding*, a defendant may prevail on an unpreserved claim only if the following conditions are met: "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond

a reasonable doubt." (Footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third prong of *Golding*). Because the record is adequate for our review, and the defendant's claim that the multiple convictions violated his right against being placed in double jeopardy is of constitutional magnitude, our inquiry focuses on whether the violation alleged by the defendant exists and deprived him of a fair trial.

A defendant's double jeopardy challenge presents a question of law over which we have plenary review. *State* v. *Bernacki*, 307 Conn. 1, 9, 52 A.3d 605 (2012), cert. denied,      U.S.     , 133 S. Ct. 1804, 185 L. Ed. 2d 811 (2013). "The double jeopardy clause of the fifth amendment to the United States constitution provides: [N]or shall any person be subject for the same offense to be twice put in jeopardy of life or limb. The double jeopardy clause is applicable to the states through the due process clause of the fourteenth amendment. . . . This constitutional guarantee prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense in a single trial." (Citations omitted; internal quotation marks omitted.) *State* v. *Woodson*, 227 Conn. 1, 7, 629 A.2d 386 (1993).

"Double jeopardy analysis in the context of a single trial is a two-step process. First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . .

"Traditionally we have applied the *Blockburger* test to determine whether two statutes criminalize the same offense, thus placing a defendant prosecuted under both statutes in double jeopardy: [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not. *Blockburger* v. *United States*, [supra, 284 U.S. 304]. This test is a technical one and examines only the statutes, charging instruments, and bill of particulars as opposed to the evidence presented at trial." (Internal quotation marks omitted.) *State* v. *Bernacki*, supra, 307 Conn. 9–10.

"Our analysis of [the defendant's] double jeopardy [claim] does not end, however, with a comparison of the offenses. The *Blockburger* test is a rule of statutory construction, and because it serves as a means of discerning [legislative] purpose the rule should not be controlling where, for example, there is a clear indication of contrary legislative intent. . . . Thus, the *Blockburger* test creates only a rebuttable presumption of legislative intent, [and] the test is not controlling when a contrary intent is manifest. *State* v. *Hill*, 237 Conn. 81, 101, 675 A.2d 866 (1996). When the conclusion

reached under *Blockburger* is that the two crimes do not constitute the same offense, the burden remains on the defendant to demonstrate a clear legislative intent to the contrary. See *State* v. *Miranda*, 260 Conn. 93, 127, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002); *State* v. *Snook*, [210 Conn. 244, 264, 555 A.2d 390, cert. denied, 492 U.S. 924, 109 S. Ct. 3258, 106 L. Ed. 2d 603 (1989)] . . . *State* v. *Gonzales*, 123 N.M. 337, 342, 940 P.2d 185 (App. 1997) (burden does not shift away from defendant once it is determined that defendant's claim fails *Blockburger* test)." (Citations omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Alvaro F.*, 291 Conn. 1, 12–13, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009).

In the present case, the two counts brought against the defendant for aggravated sexual assault against a minor arose from the same incident, the defendant's assault on S in Pope Park on July 20, 2010. Pursuant to *Blockburger*, therefore, the test to determine whether the defendant was placed in double jeopardy by being convicted of two subdivisions of § 53a-70c (a) is whether each subdivision requires proof of a fact that the other does not. *Blockburger* v. *United States*, supra, 284 U.S. 304. It is clear, and the parties agree, that this test is satisfied.

Section 53a-70c (a) provides: "A person is guilty of aggravated sexual assault of a minor when such person commits a violation of subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-71, 53a-86, 53a-87 or 53a-196a and the victim of such offense is under thirteen years of age, and (1) such person kidnapped or illegally restrained the victim, (2) such person stalked the victim, (3) such person used violence to commit such offense against the victim, (4) such person caused serious physical injury to or disfigurement of the victim, (5) there was more than one victim of such offense under thirteen years of age, (6) such person was not known to the victim, or (7) such person has previously been convicted of a violent sexual assault." Although both subdivisions (1) and (6) of § 53a-70c (a) require the state to prove that the defendant violated one of the predicate statutes, and also that the victim is under thirteen years of age, each of the subdivisions requires proof of an additional fact that the other does not. Specifically, § 53a-70c (a) (1) requires the state to prove that the defendant kidnapped or illegally restrained the victim of the assault, while § 53a-70c (a) (6) requires the state to prove that the defendant was not known to the victim.

Accordingly, unless there is clear evidence of a contrary legislative intent, either on the face of the statute or in its legislative history, subdivisions (1) and (6) of § 53a-70c (a) constitute separately punishable offenses. *State* v. *Hill*, supra, 237 Conn. 101. In other words,

because the *Blockburger* test is satisfied in the present case, there is a presumption, albeit a rebuttable one, that a defendant's conviction under both subdivisions for the same transaction does not violate the double jeopardy clause.[3]

We turn first to the text of the statute. The defendant contends that the structure and language of § 53a-70c clearly evidences a legislative intent to provide the state with seven alternative ways to seek a sentence enhancement for the predicate statutes listed in § 53a-70c (a). The defendant notes that § 53a-70c (a) first lists the predicate statutes: § 53-21 (a) (2) (risk of injury to child); § 53a-70 (sexual assault in first degree); § 53a-70a (aggravated sexual assault in first degree); General Statutes § 53a-71 (sexual assault in second degree); General Statutes § 53a-86 (promoting prostitution in first degree); General Statutes § 53a-87 (promoting prostitution in second degree); and General Statutes § 53a-196a (employing minor in obscene performance). These predicate offenses range from class A felonies to class C felonies, and are punishable by widely varying sentencing ranges, from one year to twenty-five years. Some of the predicate offenses, such as sexual assault in the first degree in violation of § 53a-70, have mandatory minimum sentences; others, such as promoting prostitution in the second degree in violation of § 53a-87, do not. For all of these predicate offenses, however, if the victim is under thirteen years of age and the state proves one of the seven additional factors set forth in the disjunctive in § 53a-70c (a), the sentencing range increases dramatically, with a maximum sentence of fifty years and a mandatory minimum sentence of twenty-five years. General Statutes § 53a-70c (b). Therefore, the defendant argues, rather than setting forth seven different offenses, the subdivisions of § 53a-70c (a) merely set forth aggravating factors.

That conclusion, the defendant argues, finds further support in the use of the phrase "such offense" to refer back to the predicate offenses listed in § 53a-70c (a). The defendant contends that the use of the singular to refer to the underlying offense demonstrates that the legislature contemplated a single, underlying offense, and provided multiple ways for a defendant to become eligible for the enhanced sentencing range in § 53a-70c (b).

We observe that the use of the phrase "such offense" to refer back to the predicate statutes, which are all listed in the disjunctive, is simply a matter of correct grammar. For each count brought pursuant to § 53a-70c, there obviously must be a single underlying offense. Nothing about the phrase "such offense," however, prevents the state from filing multiple counts alleging violations of § 53a-70c.

As for the defendant's argument relying on the location of the provisions within the same statute, this court

has held that "the mere position of statutory language in the hierarchy of sections and subsections in the penal code does not control whether such language creates a separate offense for the purpose of double jeopardy analysis." *State* v. *Woodson*, supra, 227 Conn. 11. In *Woodson*, this court analyzed a statute with a strikingly similar structure and concluded that the fact that the statute imposed higher sanctions if the state proved one or more of the multiple factors that were listed in the disjunctive in the statute's subdivisions did not clearly evidence a legislative intent to preclude multiple punishments in connection with a single transaction. Id. Just as in the present case, the defendant in *Woodson* argued that his multiple convictions under different subdivisions of a statute offended the double jeopardy clause because the four subdivisions of the statute at issue, General Statutes § 53a-111 (a), identified "alternative methods for committing the single crime of arson in the first degree." Id., 6. Section 53a-111 (a) provides: "A person is guilty of arson in the first degree when, with intent to destroy or damage a building, as defined in section 53a-100, he starts a fire or causes an explosion, and (1) the building is inhabited or occupied or the person has reason to believe the building may be inhabited or occupied; *or* (2) any other person is injured, either directly or indirectly; *or* (3) such fire or explosion was caused for the purpose of collecting insurance proceeds for the resultant loss; *or* (4) at the scene of such fire or explosion a peace officer or firefighter is subjected to a substantial risk of bodily injury." (Emphasis added.)

This court rejected the defendant's claim, holding that the mere fact that the legislature included different provisions within the same statute, as subdivisions, rather than setting them out in separate statutes, without more, was insufficient to rebut the presumption established by the state's satisfaction of the *Blockburger* test, that multiple punishments under those provisions for the same transaction do not run afoul of the double jeopardy clause. *State* v. *Woodson*, supra, 227 Conn. 11–12.

The court observed further that subdivisions (3) and (4) of § 53a-111 (a), the two subdivisions that were at issue in the case, were "directed at and punish[ed] distinct societal harms that do not necessarily coexist in every arson in the first degree." Id., 12. The court explained: "The obvious purpose of subdivision (3) is to prevent and punish fraud against the fire insurance industry, fraud for which the public pays in the long run. In contrast, the purpose of subdivision (4) is to protect the life and limb of those public servants charged with the dangerous duty of fighting fires." Id. In the present case, although the two subdivisions at issue are directed at and punish closely linked societal harms, the overlap is not determinative because the harms targeted in the two subdivisions—abduction and

restraint of child victims, and the targeting of children by strangers who are sexual predators—do not necessarily coexist in every aggravated sexual assault of a minor. General Statutes § 53a-70c (a) (1) and (6).

Also instructive is this court's decision in *State* v. *Tweedy*, 219 Conn. 489, 496, 594 A.2d 906 (1991), which held that the defendant's multiple convictions for kidnapping in the first degree in violation of different subdivisions of General Statutes § 53a-92 (a) (2) did not violate the double jeopardy clause. Although the decision in *Tweedy* did not discuss whether the language and legislative history of § 53a-92 (a) (2) rebutted the presumption established by satisfaction of the *Blockburger* test, the holding in that case does provide support for the conclusion that absent statutory language to the contrary, inclusion of different offenses within subdivisions of the same statute does not establish legislative intent merely to delineate alternative methods of committing a single offense.

We next turn to the legislative history of § 53a-70c. The defendant contends that because one of the primary purposes of No. 07-143 of the 2007 Public Acts (P.A. 07-143) was to impose harsh mandatory minimum sentences for sexual offenders who target victims under the age of thirteen, and because there is no express language in the legislative history stating that the legislature contemplated that a defendant could be sentenced to 100 years or more for a single transaction, the legislative history rebuts the presumption that § 53a-70c allows multiple punishments. We first observe that there is nothing inconsistent with the legislative purpose of imposing harsh mandatory minimum sentences on sexual offenders who target children, and the conclusion that § 53a-70c allows for the imposition of multiple punishments for the same transaction. To the contrary, the legislative purpose of P.A. 07-143, to provide severe punishments for those sexual offenders who target children, supports the conclusion that the legislature intended to allow such multiple punishments.

Moreover, the absence of express statements acknowledging the intent to allow such multiple punishments falls far short of the clear evidence required to rebut the *Blockburger* presumption. The defendant points to Senator John A. Kissel's remark during the Senate floor debate that if the state's attorney obtained a conviction against a defendant for aggravated sexual assault of a minor, "that individual would face a mandatory minimum prison sentence of twenty-five years for a first offense and fifty years for a second offense." 50 S. Proc., Pt. 11, 2007 Sess., p. 3520. The defendant appears to suggest that Senator Kissel's failure to add that if a defendant were convicted of multiple counts of aggravated sexual assault of a minor in violation of § 53a-70c, such defendant would face multiple sentences under the statute, constitutes clear evidence that

the legislature did not intend to allow multiple convictions and sentences under the statute. That inference is simply not justified on the existing record.

Accordingly, because subdivisions (1) and (6) of § 53a-70c (a) each require proof of a fact that the other does not, and because nothing in either the statutory text or legislative history of § 53a-70c reveals a contrary legislative intent, we conclude that multiple convictions under § 53a-70c for the same transaction, as in the present case, do not violate the double jeopardy clause.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 53a-70c provides: "(a) A person is guilty of aggravated sexual assault of a minor when such person commits a violation of subdivision (2) of subsection (a) of section 53-21 or section 53a-70, 53a-70a, 53a-71, 53a-86, 53a-87 or 53a-196a and the victim of such offense is under thirteen years of age, and (1) such person kidnapped or illegally restrained the victim, (2) such person stalked the victim, (3) such person used violence to commit such offense against the victim, (4) such person caused serious physical injury to or disfigurement of the victim, (5) there was more than one victim of such offense under thirteen years of age, (6) such person was not known to the victim, or (7) such person has previously been convicted of a violent sexual assault.

"(b) Aggravated sexual assault of a minor is a class A felony and any person found guilty under this section shall, for a first offense, be sentenced to a term of imprisonment of twenty-five years which may not be suspended or reduced by the court and, for any subsequent offense, be sentenced to a term of imprisonment of fifty years which may not be suspended or reduced by the court."

[2] As to count four, attempt to commit sexual assault in the first degree in violation of §§ 53a-49 and 53a-70 (a) (2), the defendant was sentenced to twenty years, five years of which are mandatory, consecutive to count two. Finally, as to count seven, for aggravated sexual assault in the first degree in violation of § 53a-70c (a) (1), the defendant was sentenced to fifty years, twenty-five of which are mandatory, consecutive to counts two and four. On January 28, 2014, the trial court vacated the defendant's convictions of risk of injury to a child and unlawful restraint pursuant to this court's decision in *State* v. *Polanco*, 308 Conn. 242, 245, 61 A.3d 1084 (2013) (when defendant convicted of greater and lesser included offenses, trial court must vacate conviction for lesser included offense).

[3] Because the defendant bears the burden to demonstrate that there is clear evidence of a contrary legislative intent, if this court were to conclude that § 53a-70c is ambiguous, the defendant could not prevail. See *State* v. *Alvaro F.*, supra, 291 Conn. 12–13. Therefore, the defendant's reliance on the rule of lenity to argue that in such an event the court should construe the statute in his favor is unpersuasive.